[No. 20461-8-III.   Division Three.   June 20, 2002.]

*In the Matter of the Marriage of* KATHRYN L. DAVISON, *Respondent*, and LARRY DAVID DAVISON, *Appellant*.

---

[56] *See* RAP 12.3-12.5.

*Douglas J. Takasugi* (of *Jeffers, Danielson, Sonn & Aylward*), for appellant.

*Laurie A. Daviess-White*, for respondent.

KATO, J. — Larry D. Davison appeals various aspects of a decree dissolving his marriage to Kathryn L. Davison. He contends (1) the judge should have disqualified herself because of an ex parte contact by Ms. Davison; (2) the court incorrectly characterized a portion of a loan as a separate debt; (3) the interest on the money judgment was unjustifiably low; and (4) the distribution of the parties' property was inequitable. We affirm in part, but remand for reconsideration of the interest rate on the judgment and for determination of attorney fees, if appropriate.

The parties were married in 1995 and separated in 1999. Ms. Davison filed this action for dissolution, and after a four-day trial the court entered findings summarized as follows:[1]

Ms. Davison was a 47-year-old secretary with an annual salary of $17,000. At the time of the marriage, Ms. Davison

---

[1] The court entered a letter opinion that contained detailed findings of fact. The court also entered findings of fact and conclusions of law, which incorporated the letter opinion's findings. Mr. Davison has not assigned error to any of the findings, which thus are verities on appeal. *See Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980); RAP 10.3(g).

owned a Wenatchee home that she had purchased with her former husband for $200,000. At the time of the Davisons' marriage, the debt on the home was approximately $103,000. The Davisons lived in the home during the marriage.

Mr. Davison was a 56-year-old self-employed electrician/ contractor. At the time of the marriage, he owned 6.43 acres, including several structures, in Redmond. Shortly after the marriage in 1995, there were three deeds of trust against the property totaling $238,500. In September 1995, Mr. Davison executed a deed of trust on the Redmond property to secure a loan for $225,000. Approximately $133,000 of this money was used to pay off an earlier debt on the property. Mr. Davison refinanced the property in 1997 and obtained a new loan for $290,000. Most of this money was used to pay off an earlier loan, but the parties netted $53,983. As part of the refinancing arrangement, Mr. Davison quitclaimed the Redmond property to the marital community. Based on this evidence, the court found that Mr. Davison owed approximately $190,000 on the Redmond property at the time of the marriage and $284,500 at the time of their separation. Mr. Davison received regular income from the Redmond property, which was deposited into his separate account and which apparently was sufficient to cover the loan payments. With respect to the Redmond property, the court concluded:

15. The Redmond property is [Mr. Davison's] separate property, despite execution of the quit-claim deed in 1997. There is no other indication that the parties intended to transfer title to the community, [Ms. Davison] has never been involved in management or responsibility for the property, and she made no claim for the property at trial.

16. At the time of separation, the debt against [Mr. Davison's] separate Redmond property was approximately $94,000 more than at the time of marriage. More than $77,000 of this increase was due to refinancing, with the funds contributed to the parties' joint account. . . . [T]hese sums constituted a gift by [Mr. Davison] to the community. . . .

17. The debt against the Redmond property is separate, in that the debt was secured by [Mr. Davison's] separate property, a substantial portion of that debt simply renewed a pre-marriage obligation of $190,000 and the additional funds received constituted [Mr. Davison's] contribution to the community from his separate assets.

Clerk's Papers (CP) at 36.

In its property distribution, the court awarded to Ms. Davison the Wenatchee home (and its associated debt) and several other assets, the total value of which was approximately $195,735, or 45.7 percent of the marital estate. The court awarded to Mr. Davison the Redmond property (and its associated debt) and several other assets, the total value of which was approximately $232,725, or 54.3 percent of the marital estate.

The court also ordered Ms. Davison to pay a money judgment of $4,500, with interest to accrue at eight percent per year. Finally, the court ordered both parties to pay their own attorney fees.

The first issue is whether the trial judge should have disqualified herself because of an ex parte contact by Ms. Davison. Several months before trial, the judge sent a letter to the parties' attorneys, stating:

> Judge Bridges recently received a letter from Kathryn Davison, a copy of which is attached. Judge Bridges provided a copy of the letter only (without the enclosures) because this case is assigned to me. This letter is sent to advise you that this case is now first set for October 23 through 25, 2000. The court expects that all parties will be ready to proceed on those dates.
>
> The court asks that counsel convey this information to their clients as soon as possible, particularly Ms. Davison, as she had expressed legitimate concerns regarding the possible delay in having this matter heard.

CP at 67. Attached to this letter was Ms. Davison's letter to Judge John E. Bridges, which stated:

> I have a restraining order against Larry Davison and I am afraid of him as well as the safety of my children. I waited nine

months for a **second** set trial date for divorce and now have been rescheduled for October 2000 as **third set**. I was given a second date, if needed in February 2001 also **third set**. Who makes these decisions and is this accepted practice for the Chelan County court system to send a case from second priority to third? Is this a mistake? My children are experiencing Larry's malice first hand, and who knows what he has in mind next.

As the property conference Judge May 17, 2000, you witnessed Larry's unwillingness to settle before trial. I have enclosed the CPS investigation file that lists Larry's unfounded allegations against me. You were told that my daughter made the call. I also investigated the $7,000 "cement foundation" check, he showed you, knowing that it was not for my home. I now have proof of its real transaction. Mr. Davison along with his attorney purposely skewed the conference so that they could go to trial.

Mr. Davison has continued his harassment **in spite of a restraining order** (see the enclosed letter he wrote this month). Both attorneys are well aware of his mental state. After reading the enclosed, I think you will agree that I should be fearful. You told me in the property conference that my only hope for the future was if "Larry found someone just like me." Now I feel a victim of the court system, which is currently giving him endless time to continue his harassment and failing me in a divorce after sixteen months of waiting. Can you help in any way?

CP at 69.

■ Mr. Davison moved before trial to disqualify the judge on the basis of this letter. The court denied the motion as well as a posttrial motion to reconsider on the same ground.

CJC Canon 3(A)(4) provides in part:

Judges should . . . , except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.

Mr. Davison contends the judge here violated this provision by considering Ms. Davison's letter. He further contends the judge should have disqualified herself because

her "impartiality might reasonably be questioned." CJC Canon 3(D)(1). "The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes that 'a reasonable person knows and understands all the relevant facts.' " *Sherman v. State*, 128 Wn.2d 164, 206, 905 P.2d 355 (1995) (quoting *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988), *cert. denied sub nom. Milken v. Sec. & Exch. Comm'n*, 490 U.S. 1102 (1989)). The effect on the judicial system can be debilitating when "a trial judge's decisions are tainted by even a mere suspicion of partiality." *Sherman*, 128 Wn.2d at 205.

■ There is no evidence in the record here that the judge considered Ms. Davison's letter as anything other than a plea for a quick resolution of the matter.[2] The judge's letter to the parties carefully avoided Ms. Davison's factual allegations, suggesting the court was not considering them as part of its disposition. The judge took no affirmative action to investigate the allegations, as did the judges in the two cases on which Mr. Davison relies. *See Sherman*, 128 Wn.2d at 203-04; *State v. Madry*, 8 Wn. App. 61, 63-68, 504 P.2d 1156 (1972). The implications of accepting Mr. Davison's argument are severe: A party effectively could disqualify a judge simply by sending an ex parte communication containing potentially prejudicial factual allegations. A judge must be expected not only to shield himself or herself from improper communications, but also to remain impartial when improper communications inadvertently and inevitably occur. In the absence of at least an inference that the judge *considered* an improper communication, the judge's impartiality may not reasonably be questioned, and recusal is not required.

---

[2] Ms. Davison asserts on appeal that the trial judge stated during a hearing that she did not even remember Ms. Davison's letter. However, the citation to the record directs the court's attention only to Ms. Davison's written response to Mr. Davison's motion for reconsideration. *See* CP at 78. The appellate record does not include a transcript of the proceeding.

Here, because there is no evidence the judge considered Ms. Davison's factual allegations, the court did not err in denying Mr. Davison's motion for disqualification.

■■ The second issue is whether the court abused its discretion by assigning to Mr. Davison the entire debt associated with the Redmond property. A trial court has broad discretion in disposing of property in a dissolution action. *In re Marriage of Olivares*, 69 Wn. App. 324, 328, 848 P.2d 1281, *review denied*, 122 Wn.2d 1009 (1993). In exercising its discretion, the court must characterize property as either separate or community. RCW 26.09.080; *In re Marriage of Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). The law favors characterization of property as community property "unless there is clearly no question of its [separate] character." *Brewer*, 137 Wn.2d at 766-67.

■ Mr. Davison contends the court assigned to him the debt associated with the Redmond property solely because it also awarded him the asset. This argument distorts the court's findings and conclusions. In fact, the court held that more than $77,000 of increased debt associated with the Redmond property was attributable to refinancing, and the proceeds were deposited to the parties' joint account. The court expressly found that these sums were a gift by Mr. Davison to the community. In light of this finding, the court did not abuse its discretion by assigning the debt associated with the Redmond property to Mr. Davison.

■ The third issue is whether the court abused its discretion in distributing the marital assets. RCW 26-.09.080 requires a court to make a "just and equitable" distribution of the parties' assets, both separate and community. Mr. Davison argues the distribution was inequitable because he was awarded only 25 percent of the community property, while Ms. Davison was awarded 75 percent. Mr. Davison fails to note, however, that he was awarded more than half of the parties' total assets. His focus on just the community assets fails to recognize that the court had jurisdiction over (and was required to distribute) both the community and the separate property. *See In*

*re Marriage of Stachofsky*, 90 Wn. App. 135, 142, 951 P.2d 346, *review denied*, 136 Wn.2d 1010 (1998). At any rate, the court is required to make an equitable distribution, not an equal one. *In re Marriage of Nicholson*, 17 Wn. App. 110, 117, 561 P.2d 1116 (1977). Mr. Davison has not established that the distribution was inequitable.

█ The final issue is whether the court abused its discretion by ordering Ms. Davison to pay interest on the money judgment at less than the statutory rate of 12 percent. RCW 4.56.110(3) provides for interest of at least 12 percent on judgments. *See* RCW 19.52.020(1). However, in exercising its discretion in a dissolution case a court may "reduce the rate or eliminate interest entirely on deferred payments which are part of the adjudication of property rights." *Berol v. Berol*, 37 Wn.2d 380, 383, 223 P.2d 1055 (1950). In setting a lower rate, there must be "some apparent reason" for allowing one party the use of the other's money at less than the statutory rate. *Id.* In *In re Marriage of Stenshoel*, 72 Wn. App. 800, 812, 866 P.2d 635 (1993), the trial court abused its discretion by failing to give *any* reason for setting a lower interest rate.

In denying Mr. Davison's motion for reconsideration, the court noted that the statutory interest rate was "very high" and current interest rates were approximately 9.25 percent. CP at 41. Assuming this finding is supported by competent evidence, it would be a valid reason for setting the interest rate at 9.25 percent. However, it does not justify setting the rate at eight percent. By not giving a reason to support this rate, the court abused its discretion. We thus remand the matter for determination of an appropriate interest rate.

██ Ms. Davison has requested attorney fees on appeal pursuant to RCW 26.09.140. The primary considerations in awarding fees in a dissolution action are "the need of the party requesting the fees, the ability to pay of the party against whom the fee is being requested, and the general equity of the fee given the disposition of the marital property." *In re Marriage of Van Camp*, 82 Wn. App. 339, 342, 918 P.2d 509, *review denied*, 130 Wn.2d 1019 (1996).

The court also may consider the merit of the issues raised on appeal. *In re Marriage of Leslie*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998), *review denied*, 137 Wn.2d 1003 (1999).

Here, although we remand for reconsideration of the interest rate on the small money judgment, the primary issues Mr. Davison raised on appeal have no merit. If Ms. Davison demonstrates financial need under RCW 26-.09.140, she is entitled to an award of attorney fees. We order the superior court on remand to determine the amount of the award. *See* RAP 18.1(i).

We affirm in part but remand for reconsideration of the interest rate on the money judgment and for determination of attorney fees, if appropriate.

BROWN, C.J., and SWEENEY, J., concur.