# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 76866-2-I |
| | ) | |
| ANGELA MARIE FISH, | ) | |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| STEPHEN EARLE FISH, | ) | |
| | ) | FILED: April 29, 2019 |
| Appellant. | ) | |
| | ) | |

MANN, J. — Angela and Stephen Fish were married for less than three years when Angela[1] petitioned for dissolution. Stephen appeals the trial court's dissolution decree and alleges that the trial court (1) failed to precisely value Angela's net worth or their shared condo, (2) failed to characterize their joint checking account, (3) mischaracterized a joint investment account, (4) erred in denying him maintenance, and (5) erred in denying his request for attorney fees. We affirm.

---

[1] For clarity, we refer to the parties by their first name. We intend no disrespect.

I.

Angela and Stephen were married on August 31, 2013, and separated on January 24, 2016. They have no children. Prior to the marriage, Stephen and Angela maintained separate bank accounts. Angela is also the benefactor of two separate trust accounts, the Angela Gribble Trust and the Bainbridge Children's Trust. The trusts were created prior to the marriage. The Angela Gribble Trust ones a condominium on Mercer Island. Angela and Stephen lived in the condominium during their marriage.

To pay community expenses during their marriage, Angela added Stephen to her Wells Fargo checking and savings accounts and designated them both as joint accounts.[2] Stephen and Angela deposited their income into the joint checking account and used it to cover community expenses. Upon their separation, the parties effectively closed the joint checking account when Angela withdrew a total of $12,900 and Stephen withdrew a total of $14,500.

During their marriage, Angela and Stephen also set up an investment account with TD Ameritrade. The account was opened in both Angela's and Stephen's names. On the TD Ameritrade standard account application form, the parties checked the box for "account type" as "Joint Tenants with Rights of Survivorship." They did not, however, check the box indicating the account was "community property." This account was funded solely with $250,000 of Angela's separate money originating from her trusts.

In February 2016, Angela alleged the marriage was irretrievably broken and petitioned for dissolution. Stephen agreed that the marriage was irretrievably broken

---

[2] At the time Angela added Stephen to the accounts, the savings account contained approximately $122,000.

-2-

and only disputed the distribution of their assets, primarily the TD Ameritrade investment account. Stephen also requested an award of maintenance and attorney fees.

After a three-day bench trial, the trial court determined that the TD Ameritrade account was Angela's separate property and awarded it entirely to her. The court also denied Stephen's request for maintenance and attorney fees. Stephen unsuccessfully moved for reconsideration with respect to the characterization of the investment account. Stephen appeals.

II.

The trial court has "broad discretion" in dissolution proceedings "to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080." In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). We review a trial court's division of property for a manifest abuse of discretion. Wright, 179 Wn. App. at 261. This is a highly deferential standard of review:

> [T]rial court decisions in a dissolution action will seldom be changed upon appeal. Such decisions are difficult at best. Appellate courts should not encourage appeals by tinkering with them. The emotional and financial interests affected by such decisions are best served by finality. The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court. The trial court's decision will be affirmed unless no reasonable judge would have reached the same conclusion.

In re Marriage of Landry, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985).

Challenged findings of fact are accepted as verities on appeal so long as they are supported by substantial evidence in the record. Wright, 179 Wn. App. at 262. Substantial evidence is "evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." In re Marriage of Chandola, 180 Wn.2d 632, 642, 327

P.3d 644 (2014). Unchallenged findings are considered verities on appeal. In re Marriage of Fiorito, 112 Wn. App. 657, 665, 50 P.3d 298 (2002).

In dividing property, the trial court must consider: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of property is to become effective. RCW 26.09.080. No factor is afforded greater weight than any other. In re Marriage of Kozen, 103 Wn.2d 470, 478, 693 P.2d 97 (1985). In weighing the factors, the trial court must make a "just and equitable" division of the property. RCW 26.09.080; In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007).

"In performing its obligation . . . the trial court must characterize the property before it as either community or separate." In re Marriage of Kile, 186 Wn. App. 864, 875, 347 P.3d 894 (2015). "[P]resumptions play a significant role in determining the character of property." In re Estate of Borghi, 167 Wn.2d, 480, 483, 219 P.3d 932 (2009). A party attempting to rebut a presumption must present clear and convincing evidence that their spouse intended to transmute the nature of the property. Borghi, 167 Wn.2d at 484.

But the characterization of property as separate or community is not controlling. In re Marriage of Shannon, 55 Wn. App. 137, 140, 777 P.2d 8 (1989). "Rather, the trial court must ensure that the final division of the property is 'fair, just and equitable under all the circumstances[,]'" In re Marriage of Olivares, 69 Wn. App. 324, 329, 848 P.2d 1281 (1993) (quoting In re Marriage of Hadley, 88 Wn.2d 649, 656, 565 P.2d 790

(1977)), because "all of the property of the parties, whether it be community or separate, is before the trial court for disposition." Shannon, 55 Wn. App. at 141.

III.

Stephen argues first that the trial court failed to properly value Angela's net worth, failed to value their shared condo, and failed to characterize the parties' joint checking account. We disagree.

When specific property is not in dispute, the court is not required to precisely value it. See Hadley, 88 Wn.2d at 656-57 (the failure to value assets was not error when the assets were insignificant and not taken into account in the property division). See also Greene v. Greene, 97 Wn. App. 708, 713, 986 P.2d 144 (1999) (When the value of a particular piece of property is in dispute, then it "is a material fact . . . [and t]he trial court is required to value" it.). The character of each item need not be specifically designated or labeled. Peterson v. Peterson, 3 Wn. App. 374, 475 P.2d 576 (1970), and the court is not required to specifically characterize each item. In re Marriage of Melville, 11 Wn. App. 879, 526 P.2d 1228 (1974).

Further, while the characterization of marital assets must be considered, a trial court's failure to specifically characterize each asset is not error when the record contains evidence of "the source and evolution of every major asset before the court." Hadley, 88 Wn.2d at 656. Instead, in dividing property in a marriage dissolution action, "fairness is attained by considering all circumstances of the marriage and by exercising discretion, not by utilizing inflexible rules." In re Marriage of Larson, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013).

The trial court did not err in not valuing Angela's net worth. It was sufficient for the trial court to recognize the general financial state of the parties, especially where Angela's superior wealth was undisputed.

It was also not error for the court to decline to value the condominium. It was undisputed that the condominium was owned by the Angela Gribble Trust, and as part of the trust was characterized as Angela's separate property.

Similarly, the trial court did not err in failing to characterize the joint checking account. The parties withdrew all funds from the joint checking account shortly after they separated. While the trial court did not precisely track all of the funds as Stephen desires, the trial court "attained [fairness] by considering all circumstances of the marriage and by exercising discretion." Larson, 178 Wn. App. at 138. Stephen has not met his burden to show that no reasonable judge would have reached this same conclusion. See Landry, 103 Wn.2d at 810.

## IV.

Stephen's primary argument is that the trial court erred in characterizing the TD Ameritrade investment account as Angela's separate property. We disagree.

Stephen argues that because the account is a joint tenancy, RCW 64.28.040(1) requires the presumption that the account be characterized as community property.[3] While we agree that RCW 64.28.040(1) creates a presumption of community property,

---

[3] RCW 64.28.040(1) provides:
Joint tenancy interests held in the names of both spouses or both domestic partners, whether or not in conjunction with others, are presumed to be their community property, the same as other property held in the name of both spouses or both domestic partners. Any such interest passes to the survivor of the spouse or survivor of the domestic partner as provided for property held in joint tenancy, but in all other respects the interest is treated as community property.

presumptions can be overcome by clear and convincing evidence that the funds are separate and not community. Borghi, 167 Wn.2d at 484.

The trial court concluded that Angela "has [properly] shown through clear and convincing evidence that the funds deposited into the TD Ameritrade investment account are traceable to her separate property." The trial court entered four largely unchallenged findings of fact in support of its conclusion:

[B.3.] The largest expense of this nature occurred between February 24 and 25, 2014. During this timeframe, [Angela] transferred $150,000 from the Angela Gribble Trust account into the joint savings account. She combined these funds with $100,000, which was already in the joint savings account and transferred a total of $250,000 into the parties' joint checking account. This brought the joint checking account to a month-end balance of approximately $251,000.[4]

[B.4.] The following month, on March 17, 2014, [Angela] transferred $250,000 from the joint checking account, into a TD Ameritrade investment account. . . . No additional funds or withdrawals, other than interest earned or losses sustained on the investments of fees paid related to the account's maintenance, have been deposited or withdrawn from the TD Ameritrade account since its inception. The TD Ameritrade account was opened in both parties' names but as a "joint tenants with rights of survivorship" account and not as a community property. As both parties' names were on the account. Both parties had full access to discuss the account's performance with the TD Ameritrade account advisors.[5]

[B.5.] The TD Ameritrade Account professionals credibly testified they discussed the possibility that [Angela's] actions could possibly convert her separate funds into community property. . . .

[B.6.] [Angela] credibly testified she opened the TD Ameritrade Account with her separate property as a way to provide a nest egg for the couple to begin their life together. She credibly testified that she thought this account would provide seed money for the couple to purchase a home together and to care for their future children's needs. The parties' actions were consistent with [Angela's] testimony. The parties never withdrew

---

[4] Stephen does not challenge finding of fact B.3.

[5] Stephen challenges the statement within finding of fact B.4 that the account was opened "not as community property." As discussed above, however, the application that the parties filled out in order to open the TD Ameritrade account included a box to check identifying the funds as community property. The box was not checked.

funds from this account. The only time they discussed withdrawing from the account was in reference to the possibility of purchasing a home together, which did not occur. The actions are consistent with wanting to create financial stability for "building a future together." As such, the Court does not find [Stephen's] testimony credible that [Angela] intended these funds to be an unconditional gift to the marital community. As the parties are now asking to end their marriage, the Court cannot find that they will "have a future together." [6]

Because the trial court concluded that Angela met her burden of proving the TD Ameritrade account was separate property by clear and convincing evidence, and its conclusions are based on unchallenged findings, the court did not abuse its discretion.[7]

V.

Stephen next argues that the trial court erred in denying his request for maintenance. Stephen contends the court erred because it failed to consider Angela's financial resources and the parties' standard of living while married. We disagree.

We review a trial court's denial of maintenance under an abuse of discretion standard. In re Marriage of Valente, 179 Wn. App. 817, 822, 320 P.3d 115 (2014).

RCW 26.09.090 controls the awarding of maintenance:

(1) In a proceeding for dissolution of marriage or domestic partnership, legal separation, declaration of invalidity, or in a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or absent domestic partner, the court may grant a maintenance order for either spouse. The maintenance order shall be in such amounts and for such periods of time

---

[6] Stephen challenges the trial court's determination that his testimony was not credible. Issues of credibility are left to the trial court and are not disturbed on appeal. See In re Marriage of Wilson, 165 Wn. App. 333, 340, 267 P.3d 485 (2011).

[7] Angela asks us to adopt a bright line rule that for a short term marriage the trial court must attempt to leave the parties in the same position that they were in before the marriage. See, Winsor, Guidelines for the Exercise of Judicial Discretion in Marriage Dissolutions, WASH. ST. B. NEWS, 14, 16 (Jan. 1982) (suggesting such a rule). We have previously emphasized that duration of marriage is only one of the statutory factors that the trial court must consider. See In re Marriage of Kaplan, 4 Wn. App. 2d 466, 476, 421 P.3d 1046 (2018), rev denied, 191 Wn.2d 1025, 428 P.3d 1184 (2018) ("An objective of placing the parties to a long-term marriage in 'roughly equal' financial positions is not a mandate for trial court . . . . The trial court must still exercise its discretion to consider all of the statutory factors."). We decline to adopt a bright line rule based only on the length of the marriage.

as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:

(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently . . .

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage;

(d) The duration of the marriage or domestic partnership;

(e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

The only limitation placed upon the trial court's ability to award maintenance is that it be just. Washburn v. Washburn, 101 Wn.2d 168, 177-78, 677 P.2d 152 (1984). Maintenance is a "flexible tool" for equalizing the parties' standard of living for an "appropriate period of time." Washburn, 101 Wn.2d at 179.

Stephen's primary argument is that because of the disparity between the parties' net worth, and because Angela can afford to pay, the trial court was required to award maintenance. Stephen ignores, however, that the ability to afford maintenance payments is only one factor, and that a trial court's paramount concern when awarding maintenance is the economic condition in which the decree leaves the parties.

After considering the testimony and evidence the trial court ultimately found:

Based upon [Stephen's] education level, current financial needs, prospective income, and the short-term nature of this marriage, Court finds he has the resources to sufficiently meet his financial needs without additional financial income.

This finding was based on several additional unchallenged findings of fact:

[C.3.] During the marriage, [Angela] financially supported [Stephen's] additional career training and educational pursuits, including career

counseling, two attempts to pass the Project Manager's Exam and tuition for his MBA program. After the point of separation, [Stephen] has supported himself through student loans and by working as a restaurant server.

[C.4.] [Stephen] will complete his MBA program in June 2017. [Stephen] credibly testified his tuition for the MBA program costs about $9,000 per quarter. The parties agree until the point of separation in January 2016, [Stephen} had no outstanding debt related to his MBA program.

[C.5.] [Stephen] testified that he could earn as much as $80,000 a year upon receiving his MBA degree. The Court also finds [Stephen] has the option to support himself by way of teaching Opera or vocal lessons at the rate of at least $40.00 as additional income. In making this finding, the Court does not accept [Stephen's] testimony as credible that he cannot support his personal needs without additional financial assistance or that he needs additional training to utilize his prior employment experiences and education in order to teach Opera or voice lessons to private students.

Stephen contends that the statements in finding of fact C.5 that he could potentially earn $80,000 a year with an MBA and that he could offset his income by teaching voice lessons, were not supported by substantial evidence. But Stephen himself testified that he could earn as much as $80,000 a year upon receiving his MBA. And further, the court did not conclude that Stephen would be earning this much immediately but instead that this was potentially obtainable. Similarly, the court determined that Stephen's testimony about his financial needs was not credible. We will not disturb the trial court's credibility determinations on appeal. Wilson, 165 Wn. App. at 340. Finding of fact C.5 was supported by sufficient evidence in the record.

Stephen also argues that the trial court failed to analyze the standard of living that the couple enjoyed while married. Stephen argues that because the couple lived in Angela's condo, that Angela bought herself a new car, that Angela bought a fitness club membership for the couple, and that Angela paid for Stephen's MBA program, the

couple lived a lavish lifestyle. The trial court disagreed, finding that "[d]uring the marriage, the parties did not live an extravagant lifestyle[,] [and that Angela] credibly testified she regularly emphasized the need for the couple to live within their modest income." The court further found that, while Angela was the beneficiary of two trusts, "she works full time earning approximately $50,000 a year." Stephen does not challenge the trial court's findings and offers no evidence to the contrary.

The trial court did not abuse its discretion in declining to award maintenance to Stephen.

VI.

Stephen argues next that the trial court abused its discretion in denying his request for attorney fees. We disagree.

This court reviews a trial court's denial of attorney fees under an abuse of discretion standard. In re Marriage of Williams, 84 Wn. App. 263, 272, 927 P.2d 679 (1996).

RCW 26.09.140 provides that the court may "from time to time after considering the financial resources of both parties" award a party its reasonable attorney fees. Stephen argues that the trial court considered an inappropriate factor, the duration of their marriage in denying his request and failed to analyze Angela's ability to pay.

"The primary considerations in awarding fees in a dissolution action are 'the need of the party requesting the fees, the ability to pay of the party against whom the fee is being requested, and the general equity of the fee given the disposition of the marital property.'" In re Marriage of Davison, 112 Wn. App. 251, 259, 48 P.3d 358

-11-

(2002) (quoting In re Marriage of Van Camp, 82 Wn. App. 339, 342, 918 P.2d 509 (1996)).

While Stephen is correct that the length of the marriage is not a relevant factor in the court's attorney fee decision, the trial court's mention of the length of the marriage appears mere surplusage and does not require remand. The trial court found that Stephen "has no[t] demonstrated a need . . . to his attorney's fees." This finding was supported by the unchallenged findings that Stephen's mother gave him $25,000 toward his attorney fees as a gift, and that his legal bill was "essentially paid in-full" with less than $5,000 owning.

The trial court appropriately exercised its discretion, articulating a tenable reason for denying Stephen's attorney fees: that under the circumstances, Stephen "had not demonstrated a need" for Angela to pay his fees.

## VII.

Finally, Stephen asks us to award him his attorney fees on appeal. RAP 18.1(a) gives us the discretion to award fees on appeal "[i]f applicable law grants to a party the right to recover" such fees. RCW 26.09.140 provides that the court may "from time to time after considering the financial resources of both parties" order a party to pay reasonable attorney fees. Here, as below, Stephen only argues that "[g]iven the relative disparity in resources of the parties . . . an award of fees on appeal is justified." Stephen appears to contend that because Angela is worth more than he is and is able to afford his fees, this somehow compels her to pay for his appeal. No case law supports this contention. We deny Stephen's request for attorney fees on appeal.

We affirm.

_____ Mann, J

WE CONCUR:

_____ Chun, J.

_____ Appelwick, CJ