# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Marriage of: | ) | DIVISION ONE |
| | ) | |
| KENNETH B. KAPLAN, | ) | |
| | ) | No. 73119-0-I |
| Respondent/Cross-Appellant, | ) | (consol. with No. 73492-0-I) |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SHEILA KOHLS, f/k/a | ) | |
| SHEILA KOHLS-KAPLAN, | ) | |
| | ) | |
| Appellant/Cross-Respondent. | ) | FILED: June 13, 2016 |
| | ) | |

DWYER, J. — The disharmony between Kenneth Kaplan and Sheila Kohls continues. No strangers to this—or the superior—court, the former spouses bring to us the latest iteration of their seemingly continuous, acrimonious litigation. Each party asserts numerous claims for relief from the trial court's orders. None have merit. We affirm.

I

Kohls and Kaplan married in 1992. They have two children together, a daughter, I.K., age 17, and a son, Z.K., age 20.[1] Throughout their marriage, Kaplan was employed as an attorney and Kohls was a stay-at-home mother.

---

[1] These were the ages of the children at the time of the 2015 court proceedings.

In March 2005, the superior court dissolved their marriage. As part of the dissolution, Kohls and Kaplan entered into an agreed child support order. They also agreed that the children's postsecondary education would be funded through a trust established by the children's paternal grandparents.

In June 2013, Kohls—initially appearing pro se and later represented by counsel—filed a petition seeking modification of the child support order, which had been previously modified in 2010.[2] Therein, Kohls contended that the child support order should be modified because, among other reasons, "[a] parties' [sic] income may have changed substantially," and because "[t]he previous order work[ed] a severe economic hardship" on both her and I.K.

Kaplan contested Kohls' petition. Both parties submitted documentation in support of their arguments, including affidavits and financial worksheets. Discovery was also conducted.

On November 22, the parties appeared before a court commissioner, the Honorable Jacqueline Jeske, for trial by affidavit. After hearing from counsel, Commissioner Jeske set forth a detailed oral ruling. Therein, Commissioner Jeske ordered, among other things, (1) that Kaplan be granted a deduction in his income for the cost of certain insurance premiums, (2) that both Kohls and Kaplan were entitled to be reimbursed for the cost of certain unpaid health care

---

[2] At the time of the 2010 modification, Kohls had returned to work as an elementary school nurse and Kaplan had resigned from the Washington State Bar to work full-time in his own company, Kaplan Real Estate Services (KRES).

expenses for I.K. and Z.K.,[3] and (3) that Kohls was entitled to an award of attorney fees and costs.[4] She denied Kohls' request to be reimbursed for paying more than her share of health insurance premiums for I.K. and Z.K.

On January 8, 2014, Commissioner Jeske entered a written "Order on Modification of Child Support," a written "Order on Presentation," a written "Order of Child Support," and written "Findings/Conclusions on Petition for Modification of Child Support". In these documents, the commissioner granted Kohls' petition for modification. In doing so, she imputed to Kaplan a monthly net income of $34,871.85. She also ordered that, during the summer months, Kaplan would pay an additional $300 monthly transfer payment to cover postsecondary support for Z.K.[5] Finally, she awarded attorney fees and costs to Kohls in the amount of $29,500 in fees and $5,360.31 in costs. Kaplan was required to pay this amount on her behalf.

Thereafter, Kohls moved for revision of Commissioner Jeske's ruling. Kaplan moved for reconsideration and also later moved for revision. Kohls' motion for revision was stayed pending a decision on Kaplan's motion for reconsideration.

On May 13, Commissioner Jeske set forth a detailed written "Order on Reconsideration." Therein, the commissioner made several changes to her initial

---

[3] Commissioner Jeske ordered that the amount of unpaid health care expenses would be set at a later date, after Kohls and Kaplan provided the superior court with receipts setting forth the amount that was claimed to be owed.

[4] Commissioner Jeske ordered that the amount of the award would be set at a later date, after Kohls' counsel provided the court with an accounting of the fees and costs.

[5] Commissioner Jeske ordered that this amount would be prorated if Z.K. resided with Kohls for more than half but less than a full month.

- 3 -

order. First, she granted Kaplan a deduction in his income for the depreciation of certain equipment and furnishings. Second, she corrected an error in the imputation of Kaplan's income by removing the double inclusion of his rental income.

Following reconsideration, Commissioner Jeske ordered Kohls' counsel to prepare a revised order for later entry. Kohls' counsel thereafter drafted a revised order that was inconsistent with Commissioner Jeske's ruling and more favorable to his client.

After reviewing the proposed order, Kaplan moved for CR 11 sanctions to be imposed on both Kohls and her counsel. Commissioner Jeske granted the request.

On June 16, Commissioner Jeske entered a written "Final Order of Child Support Following Reconsideration." Therein, she confirmed her written "Order on Reconsideration." She imputed to Kaplan a monthly net income of $31,713.72.

On August 8, the Honorable Sean O'Donnell heard argument on the competing motions for revision. After hearing argument, he deferred ruling.

On August 11, Kohls filed a "Post-Hearing Memorandum Regarding Motions for Revision." The next day, Kaplan moved for the court to strike Kohls' posthearing memorandum and impose CR 11 sanctions on both Kohls and her counsel. Judge O'Donnell granted each request.

On September 19, Judge O'Donnell filed a written "Order on Revision." Therein, Judge O'Donnell concluded that modification of the child support order

was not warranted because Kohls had not met her burden of demonstrating either a sufficient change in circumstances or a severe economic hardship. Instead, the judge converted Kohls' petition for modification to a motion for adjustment. Judge O'Donnell then adjusted the child support order. In doing so, he adopted Commissioner Jeske's calculation of both Kohls' and Kaplan's incomes,[6] her "ruling and analysis with respect to attorneys' fees and costs," and her "ruling and analysis with respect to sanctions imposed against" Kohls and her attorney.

Thereafter, Kohls moved for Judge O'Donnell to revise or clarify his "Order on Revision." Judge O'Donnell granted Kohls' request, both revising and clarifying the order. Judge O'Donnell clarified his order by correcting a scrivener's error pertaining to the imputation of Kaplan's income. He revised his order by granting Kohls an additional $8,750 in attorney fees, payable by Kaplan.

On January 20, 2015, Judge O'Donnell entered a written "Order re Adjustment of Child Support." Therein, the judge denied Kohls' petition for modification, instead ruling that an adjustment was warranted. That same day, he entered a written "Adjusted Order of Child Support on Revision." Therein, Judge O'Donnell ordered, among other things, that Kaplan was granted a 22.2 percent downward deviation from the standard support schedule in his monthly child support obligation for I.K.

---

[6] Judge O'Donnell's calculation of Kohls' income departed from Commissioner Jeske's calculation in one respect. He permitted Kohls to include what he deemed to be "deductions for her mandatory pension plan payments and her voluntary retirement contributions," which were previously not included.

On February 19, after Kaplan paid the amount of the attorney fee award, Kohls' counsel filed a partial satisfaction of judgment with regard to the award.

On April 3, Kaplan moved for the superior court to strike the February 19 partial satisfaction of judgment, enter a full satisfaction of judgment, and impose CR 11 sanctions on both Kohls and her counsel. Judge O'Donnell struck the partial satisfaction of judgment, ordered the entry of a full satisfaction of judgment, but denied Kaplan's request for CR 11 sanctions.

Kohls and Kaplan both now appeal.

II

Kohls first contends that the superior court erred by denying her petition for modification of the child support order. This is so, she asserts, both because she met her burden of demonstrating that a substantial change in circumstances had occurred since the 2010 order was entered and because she met her burden of demonstrating that the 2010 order works a severe economic hardship on both her and I.K. We disagree.

"We review child support modifications and adjustments for abuse of discretion." In re Marriage of Ayyad, 110 Wn. App. 462, 467, 38 P.3d 1033 (2002). In doing so, "[g]enerally, we review the superior court's ruling, not the commissioner's." State ex rel. J.V.G. v. Van Guilder, 137 Wn. App. 417, 423, 154 P.3d 243 (2007). But, "[t]he superior court may adopt the commissioner's findings of fact as its own." In re Dependency of B.S.S., 56 Wn. App. 169, 171, 782 P.2d 1100 (1989). We will not substitute our judgment for that of the trial court unless the trial court's decision rests on unreasonable or untenable

-6-

grounds. In re Marriage of Leslie, 90 Wn. App. 796, 802-03, 954 P.2d 330 (1998). "A trial court does not abuse its discretion where the record shows that it considered all the relevant factors and the child support award is not unreasonable under the circumstances." Van Guilder, 137 Wn. App. at 423. "Findings of fact supported by substantial evidence, i.e., evidence sufficient to persuade a rational person of the truth of the premise, will not be disturbed on appeal." Van Guilder, 137 Wn. App. at 423.

RCW 26.09.170 sets forth two methods for requesting a change in a child support order from the superior court: a petition for modification or a motion for adjustment. RCW 26.09.170(5)(a), (6)(a), (7)(a).

A petition for modification commences with filing a petition and worksheets and serving those documents on the parties. RCW 26.09.175(1), (2)(a). After responsive pleadings have been filed, any party may schedule the matter for a hearing. RCW 26.09.175(5). Unless otherwise agreed or permitted by the court, the court confines its review to the affidavits, petition, answer, and worksheets. RCW 26.09.175(6).

Upon reviewing these documents, the court may order modification of the child support order "based upon a showing of substantially changed circumstances at any time." RCW 26.09.170(5)(a). A substantial change of circumstances must be something that was not contemplated at the time that the last child support order was entered. In re Marriage of Moore, 49 Wn. App. 863, 865, 746 P.2d 844 (1987). This is so because the court views a petition as "'significant in nature and anticipates making substantial changes and/or

additions to the original order of support.'" In re Marriage of Morris, 176 Wn. App. 893, 901, 309 P.3d 767 (2013) (quoting In re Marriage of Scanlon, 109 Wn. App. 167, 173, 34 P.3d 877 (2001)). In the absence of a substantial change in circumstances, a modification may be ordered if one or more years has passed since the last child support order was entered and "the order in practice works a severe economic hardship on either party or the child." RCW 26.09.170(6)(a).

An adjustment, in contrast, "is a streamlined process that is commenced by filing a motion for a hearing and is used to conform the existing provisions of a child support order to the parties' current circumstances." Morris, 176 Wn. App. at 901 (citing Scanlon, 109 Wn. App. at 173). It may be ordered in certain, listed situations, which do not require demonstrating a substantial change in circumstances, RCW 26.09.170(7)(a), such as "[c]hanges in the income of the parents" if 24 months have passed since the date of entry of the last order, adjustment, or modification, whichever is later. RCW 26.09.170(7)(a)(i).

## A

Kohls first argues that the "near quadrupling" of Kaplan's income between 2010 and 2013 constituted a substantial change in circumstances. In doing so, she challenges the superior court's finding that "the disparity between Mr. Kaplan's and Ms. Kohls' earnings has remained constant and was predicted to do so at the time the 2010 order was entered," contending that this finding is not supported by substantial evidence. The record indicates otherwise.

"[W]hether a change in circumstances is substantial depends on its effect on a parent's monthly net income." In re Marriage of Bucklin, 70 Wn. App. 837,

840, 855 P.2d 1197 (1993). This is "a decision that rests almost exclusively with the trial court." Hume v. Hume, 74 Wn.2d 319, 320, 444 P.2d 804 (1968). A change in income constitutes a substantial change in circumstances if the change was one that was not contemplated at the time that the last child support order was entered. Scanlon, 109 Wn. App. at 173. But mere passage of time or routine changes in income are insufficient to warrant relief. Scanlon, 109 Wn. App. at 173-74 (a substantial change of circumstances may exist where a mother's income unexpectedly increased to more than $270,000 per year, her assets exceeded $5 million, her gross annual household income was more than $800,000, and she had remarried since the last child support order was entered); cf. In re Marriage of Arvey, 77 Wn. App. 817, 821-22, 894 P.2d 1346 (1995) ($962 decrease in monthly net income insufficient to warrant relief).

Judge O'Donnell concluded that Kohls did not meet her burden of demonstrating that a substantial change in circumstances had occurred since the 2010 order had been entered.

> [T]he Court has compared Ms. Kohls' financial declarations from 2010 and 2014 as well as the child support worksheets from both of those years.[7] As identified by the parties, a number of things have remained consistent. The first is that Ms. [Kohls]' income has remained largely the same (her net monthly income is slightly less in 2014 compared to 2010).[8] Her expenses have been significantly reduced, based in part on her refinancing her home.[9] But other

---

[7] The record reflects that the financial declarations are actually comparisons for the years 2010 and 2013. We find this variance of no significance.

[8] In an August 2010 financial declaration, Kohls attested that her net monthly income was $2,523. In September 2010, she attested that her net monthly income was $2,021. In June 2013, she attested that her net monthly income was $2,293.

[9] In the August 2010 financial declaration, Kohls attested that her total monthly expenses were $6,335. She stated that they were $7,832 in September 2010, and that they were $5,356 in June 2013.

expenses have been reduced as well, including costs for the children ($700 in 2014 vs. $800 in 2010), transportation ($415 in 2010 vs. $390 in 2014) and personal expenses ($500 in 2010 vs. $205 in 2014). Some expense[s] have increased marginally, e.g., health care and utilities.[10] Food expenses have, perhaps, jumped the most significantly ($900 in 2010 to $1200 in 2014), but in 2014 Ms. [Kohls] has accounted for three people in the residence when, in fact, her oldest son is at college for most of the year.

The Court cannot find that an increase in expenses for [I.K.] is a sufficient basis to support a modification. Neither can the Court find that a substantial change in circumstances results from Mr. Kaplan now not paying for his son's private school tuition, given that the parties and the Court which entered the order would surely had contemplated [Z.K.] graduating from high school. While this may free additional funds for Mr. Kaplan, that would have been apparent back in 2010.

With respect to the credit for health care premiums, the parties currently agree that the premiums are $118.00 per child. However, this change in and of itself is not a substantial one as contemplated either under the statute or case law.

. . . .

The final basis for this modification would be Mr. Kaplan's increased income since 2010. In 2005, Mr. Kaplan's gross monthly income was $29,370.00. In 2010, the Court imputed his gross monthly income at $21,779.00. Commissioner Jeske found that Mr. Kaplan's current gross monthly income is $32,129.72.[11] Setting aside momentarily [ ] how the Courts arrived at these income calculations, the disparity between Mr. Kaplan's and Ms. Kohls' earnings has remained constant and was predicted to do so at the time the 2010 order was entered.[12] The increase, however, is not akin to the changes found, for example, in the Scanlon case, noted by both parties in their briefing. It does not rise to a substantial change in circumstances.

---

[10] The financial declarations indicate that Kohls attested that her health care expenses were $200 in August 2010, $250 in September 2010, and $220 in June 2013. The financial declarations also indicate that Kohls attested that her utility expenses were $600 in August 2010, $612 in September 2010, and $630 in June 2013.

[11] The record indicates that this number was later corrected to reflect that "Mr. Kaplan's *net* monthly income was $31,713.72." Accordingly, we consider it nothing more than a scrivener's error.

[12] In 2010, the court found Kohls' actual monthly net income was $2,444 and imputed Kaplan's monthly net income at $8,137. In 2015, the court found that Kohls' actual monthly net income was $1,812.53 and imputed Kaplan's monthly net income at $31,713.72.

Based on Judge O'Donnell's explanation of his ruling, it is evident that he concluded that the relatively small variances in both Kohls' income and expenses between 2010 and 2013, when coupled with the fact that Kohls' and Kaplan's income had historically been disparate, evidenced that a substantial change in circumstances had not occurred. Judge O'Donnell was in the best position to make this determination. He did so thoroughly, thoughtfully, and based on the substantial evidence in the record before him. There was no error.

B

Kohls next challenges Judge O'Donnell's factual finding (and his ultimate conclusion) that the 2010 order of child support did not work a severe economic hardship on either Kohls or I.K. because Kohls' economic situation was contemplated at the time that the 2010 order was entered. Kohls contends that this finding is not supported by substantial evidence. Again, the record indicates otherwise.

The existence of a severe economic hardship is a factual determination that is within the discretion of the trial judge. See In re Marriage of Schumacher, 100 Wn. App. 208, 211, 997 P.2d 399 (2000). When making this determination, the court recognizes that there is no formal legal test for a severe economic hardship because none could adequately encompass the wide range of factual situations that might arise. Rather, the court looks to the actual effect of a child support order. Schumacher, 100 Wn. App. at 212 (finding that an "unwieldy and unpredictable" method for calculating a parent's child support obligation created a severe economic hardship where it "denied [the parent] an opportunity to

budget their child's financial needs"). The party seeking the modification bears

the burden of proving that a severe economic hardship exists. See, e.g., Arvey,

77 Wn. App. at 820-22; see also RCW 26.09.170(6)(a).

On revision, Judge O'Donnell concluded that the 2010 child support order

did not work a severe economic hardship on either Kohls or I.K.

> With respect to the current order working a "severe economic hardship," Ms. Kohls provides limited information on this topic. Her overall expenses have actually decreased since the 2010 order. She alleges that because her son has moved out of the house and support payments for him have stopped, her economic situation is bleak. But that surely was contemplated at the time the 2010 order was entered. Moreover, since he is at college (paid for by a scholarship/trust put into place by his grandparents) her expenses for [Z.K.] are reduced.
>
> Ms. Kohls similarly states in her responsive pleadings that [I.K.'s] increased residential time with her increases her expenses. Her financial declarations from 2010 and 2014 contradict this assertion as her overall expenses have decreased.
>
> Ms. [Kohls] finally claims that the current order is "cheating our daughter out of the opportunities she would have otherwise enjoyed and can still enjoy, including the opportunities to take the guitar and voice lessons she so desires and to participate in ski bus trips at her school and attend summer camps."
>
> . . . .
>
> Here, Ms. Kohls points to the disparity in her income versus her monthly obligations. But these circumstances were more acute in 2010 than it is in 2014. The assertions regarding an inability for their daughter to attend things like voice lessons and summer camp do not rise to a severe economic hardship. On this ground, the evidence does not support her claim of economic hardship.

Based on Judge O'Donnell's explanation of his ruling, there are three

identifiable bases for his conclusion that the 2010 child support order did not

work a severe economic hardship on either Kohls or I.K. First, Judge O'Donnell

found that Kohls' economic situation in 2015 was contemplated at the time that

the 2010 order was entered given that, at that time, child support payments for

Z.K. were envisioned to end as a natural and probable consequence of his reaching the age of majority. Second, Judge O'Donnell found that Kohls' assertions regarding the disparity in her monthly income and expenses (when the record reflected the contrary), the ending of the child support payments for Z.K., and the fact that I.K. was hampered in participating in various extra-curricular activities were all insufficient grounds upon which to find a severe economic hardship. (Indeed, Kohls' assertion of a severe economic hardship is based on her mistaken belief that the child support payments are intended for *her* benefit, not the benefit of her children). Third, it is evident that Judge O'Donnell concluded that it was not proved that I.K.'s basic needs were not being met by the 2010 order. Thus, he found that a severe economic hardship did not exist. Judge O'Donnell was in the best position to make this determination. He did so thoroughly, thoughtfully, and based on the substantial evidence in the record before him. There was no error.[13]

## III

Kohls next contends that the superior court erred by declining to address whether child support should be set above the maximum advisory level. We disagree.

First, Kohls asserted to the superior court that it should utilize "extrapolation" to set Kaplan's child support obligation above the maximum

---

[13] In her appellate brief, Kohls also contends that the superior court abused its discretion by converting her petition for modification to a motion for adjustment. We disagree. RCW 26.09.170(7)(a)(i) permitted the trial court to make an adjustment based on "[c]hanges in the income of the parents." Thus, there was no error.

advisory level. The superior court was not permitted to do so. See In re Marriage of McCausland, 159 Wn.2d 607, 617, 152 P.3d 1013 (2007). Second, Kohls asserted to the superior court, and persists in asserting on appeal, that the child support should be set above the maximum advisory level given the disparity between Kohls' and Kaplan's financial resources. In such a circumstance, Kohls does not establish a claim for appellate relief. See Scanlon, 109 Wn. App. at 180 ("Child support is designed to meet the needs of the children at issue; its sufficiency is not measured by whether it financially strains the obligor parent.").

IV

Kohls next contends that the superior court erred by not adopting Commissioner Jeske's ruling regarding Z.K.'s postsecondary support. Given that Judge O'Donnell properly converted Kohls' petition for modification to a motion for adjustment, Kohls does not establish a claim for appellate relief. See In re Marriage of Sprute, 186 Wn. App. 342, 349, 344 P.3d 730 (2015); see also Morris, 176 Wn. App. at 902.[14]

V

Kohls next contends that the superior court erred in calculating Kaplan's income. This is so, she asserts, both because the superior court improperly permitted Kaplan to take a deduction for the depreciation of certain equipment and furniture and because the superior court improperly permitted Kaplan to take

---

[14] Kohls also contends that the superior court's ruling should have addressed postsecondary support for I.K. The request for postsecondary support for I.K., however, is precluded for the same reasons.

- 14 -

a deduction for the cost of certain insurance premiums. Each contention is unavailing.

In Washington, child support obligations are calculated according to the statutory support schedule. See RCW 26.19.020. The schedule was enacted in order "to insure that child support orders are adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living." RCW 26.19.001; Leslie, 90 Wn. App. at 803. In enacting the schedule, the legislature also "intended to equitably apportion the child support obligation between both parents." Ayyad, 110 Wn. App. at 467; RCW 26.19.001. The schedule sets forth support obligations for each child based on the combined monthly net income of both parents, the number of children in the family, and the age of each child. See RCW 26.19.020.

"When assessing the income and resources of each household, the court must impute income to a parent when that parent is voluntarily unemployed or voluntarily underemployed. . . . The court determines whether to impute income by evaluating the parent's work history, education, health, age and any other relevant factor." In re Marriage of Pollard, 99 Wn. App. 48, 52-53, 991 P.2d 1201 (2000); see also RCW 26.19.071(6). In doing so, the court makes an equitable determination. See MARIAN F. DOBBS, DETERMINING CHILD & SPOUSAL SUPPORT, § 4.37, at 884-91 (2015) ("[S]tates recognize that proceedings governing the dissolution of marriage, support, and custody are equitable in nature and thus governed by basic rules of fairness . . . . When a court determines that a parent is voluntarily impoverished, it may consider any admissible evidence to ascertain

potential income. Potential income is not the type of fact that is capable of being verified through documentation or otherwise." (footnote omitted)); see also In re Marriage of Gainey, 89 Wn. App. 269, 275, 948 P.2d 865 (1997) (no abuse of discretion where the trial court estimated a father's income "using a reasonable method not dependent on the information [the father] was failing to produce"); see also, e.g., In re Marriage of Clark, 13 Wn. App. 805, 810, 538 P.2d 145 (1975) ("The key to an equitable distribution of property is not mathematical preciseness, but fairness.").

In the "Order on Reconsideration," Commissioner Jeske set forth how she imputed Kaplan's income.

> Several errors are claimed in the request for reconsideration. The Court denies the request on reconsideration to alter the depreciation figures and credit as to the credit related to loan payments. . . . However[,] the Court will grant the request as to the depreciation related to equipment and furnishings ($10,397). While the record is less than specific as to this disputed deduction resulting in an out of pocket loss, there is sufficient evidence in the record that this smaller amount relates to an actual expenditure[ ] associated with Mr. Kaplan's interest in the LLC's. . . . Mr. Kaplan's submissions and presentation at trial did not clearly trace, document and explain his actual out of pocket expenses in the form of depreciation rather than his paper losses. It is unclear which amounts (depreciation) were attributable to his share of each individual property and by what amount it reduced his personal income (e.g. from his proportionate share of each LLC). While the court did not doubt at trial that some portion of these expenses were legitimate, he did not clearly demonstrate and adequately separate these out from other losses. He did not meet his burden of proof as to the other depreciation expenditures. . . .
> The Court grants the request to correct an error as to the double inclusion of his rental income calculation. The income figure is a net figure, imputed for purposes of support. Clearly it is not consistent with his reported income for purposes of his income tax return. Nor does the Court have confidence in Mr. Kaplan's personal tax returns as a basis for determination of income for

purposes of child support. The Court imputed income as a net amount and substantial evidence supports this amount.

. . . .

. . .Despite providing copious financial records, neither party presented a clear, credible and accurate presentation of Mr. Kaplan's income (gross or net), legitimate deductions for child support purposes vs. business or tax purposes (from KRES or any other business interest), or a financial declaration that comported with LR 10[15] and offered a complete understanding of his income, assets and debts (personal vs. business). Mr. Kaplan's real income is unknown to this Court both at trial and on reconsideration due to the complexity of his business interests and his own lack of adequate explanation and financial documentation to this Court. Despite his regular employment of both a certified public accountant and a bookkeeper, his presentation at trial appeared to be focused more on the lack of credibility of [Kohls] than on a credible explanation of his income, supported by financial evidence. His significant and consistent use of legitimate business deductions from a variety of sources to reduce personal expenses or fund significant personal expenses (private school tuition, use of a vehicle, travel, entertainment and the like) through his business is amply supported in the record. The Court thus elected to impute income to him absent his presenting the Court with adequate explanation supported by financial evidence.

The Court considered both parents' total household resources, incomes and ability to maximize deductions along with their reported assets and liabilities. Mr. Kaplan's lifestyle includes frequent dining at expensive establishments including Wild Ginger, El Gaucho, Palominos, Daniel's Broiler and Dukes. His household expenses include a gardener, maid and massages. His travel habits, with or without his children, reflect recent trips to New York, South America, Palm Springs, and the like. His more recent annual credit card expenditures for personal expenses ($80,000 + . . .) all reflect a wealthy lifestyle. . . . [T]his court was not able to determine his actual real income so it imputed it on the basis of his expenses, lifestyle and standard of living. A prior declaration by Mr. Kaplan self-reported a total monthly net income of $7[,]112 and listed total monthly expenses of $12,176. How he paid the private school expenses, credit card personal expenses, child support and his household expenses and lifestyle on this amount was never

---

[15] Commissioner Jeske was referencing Local Family Law Rule (LFLR) 10. LFLR 10 governs "Financial Provisions." This rule sets forth the circumstances in which financial information is required, the type of supporting documentation that may be filed with a financial declaration, and the type of documents that are to be filed under seal.

explained. Little to no explanation was provided as to the separation or inclusion of business expenses paid by KRES which operated to minimize his personal expenses or how he managed to fund his lifestyle solely based on the net income he reported on either his financial declaration or his tax return. . . .

. . . .

The cumulative record here reflects that Mr. Kaplan's expenditures, lifestyle, payment of business and personal expenses, legitimate tax deductions and capital accretion are simply not reflective of his income as reported on his LR 10, bank statements or past personal tax returns. There is no doubt that the evidence he adduced at trial through his CPA and bookkeeper presented the Court with his legitimate tax deductions and some personal expenses taken as distributions. But he nevertheless failed to explain that where his tax returns, bank statements and self-reported income are largely and dramatically inconsistent with his actual lifestyle, RCW 26.09 et seq. does not require the Court to find this evidence controlling as to an imputation of his income and determination of his resources.

On revision, Judge O'Donnell adopted Commissioner Jeske's imputation of Kaplan's income.

As a threshold matter, the Court notes that Commissioner Jeske[ ] conducted a careful analysis, both oral and written, concerning the degree of difficulty in ascertaining Mr. Kaplan's true income. Having read Mr. Kaplan's responses to questions posed to him during his deposition, it is difficult to reach a different conclusion.

. . . .

In her oral ruling on November 22, 2013, Commissioner Jeske noted that each party had an obligation to provide a holistic picture of their respective assets. Given this statutory obligation, the Commissioner was mystified by Kaplan's lack of clarity and level of obfuscation. Commissioner Jeske found it reasonable to assume that "if a party controls an LLC, has a CPA, has a bookkeeper, and has a juris doctorate and the level of history of expertise in this area of management of properties, he should be able to explain to a judicial officer his legitimate business income and his legitimate expenses and parse those out in a clear record from personal [expenses] . . ." Oral Ruling of Commissioner Jeske 15.15-22

This Court agrees.

The Commissioner also found it obvious that Mr. Kaplan's business and personal expenses were comingled and that Mr. Kaplan's self-reported income was inaccurate, as shown by his high standard of living and lack of debt.

Accordingly, to calculate Mr. Kaplan's monthly child support transfer payment, the Commissioner added several of Mr. Kaplan's untraceable expenditures to his reported income. This resulted in an imputed monthly income of $31,713.72, and a $1,712.84 monthly transfer payment for [I.K.].

For purposes of determining his gross monthly income, this Court finds that Mr. Kaplan is voluntarily under-employed. Indeed, Mr. Kaplan's claimed income is divorced from the reality of monies (or personal benefits) he is actually receiving each month, however he may wish to characterize these expended funds. The Court therefore imputes gross monthly income to him in the amount of $32,129.72.[16]

This amount takes into consideration Mr. Kaplan's standard of living, his lack of debt, and the expenditures from which he personally benefitted as a result of payments by KRES and which are difficult, if not impossible, to untangle from his wholly owned business.

Here, Commissioner Jeske was provided with declarations from both Marianne Pangallo, Kaplan's Certified Public Accountant, and Richard Sobie, Kaplan's bookkeeper, in order to assist in calculating his income. Pangallo attested that Kaplan's income should include deductions for the cost of certain insurance premiums and for the depreciation of various equipment and furnishings. When imputing Kaplan's income, Commissioner Jeske chose to credit Pangallo's testimony by granting Kaplan both of these deductions. On revision, Judge O'Donnell agreed with Commissioner Jeske's calculation and, thus, adopted her imputation of Kaplan's income. On appeal, given that imputation of income is an equitable determination, not an arithmetically exact

---

[16] Again, the record indicates that the trial court subsequently corrected this to reflect that "Mr. Kaplan's *net* monthly income was $31,713.72."

determination, we look to the final imputed figure, instead of its component parts, to determine if the imputed amount is within the range of the evidence presented. It is. The trial court did not abuse its discretion in making this equitable determination.

VI

Kohls next contends that the superior court erred by granting Kaplan a deviation from the standard child support obligation. This is so, she asserts, both because Judge O'Donnell erred by stating that the 22.2 percent downward deviation ordered in 2010 was the "the law of the case" in 2015, and because the 22.2 percent downward deviation was not supported by substantial evidence. While Kohls is correct that Judge O'Donnell misspoke by stating that such deviation was the "law of the case," there is no error because the deviation is supported by substantial evidence.

A deviation is "a child support amount that differs from the standard calculation." RCW 26.19.011(4). The trial court "has discretion to decide the extent of any deviation." In re Marriage of Trichak, 72 Wn. App. 21, 23, 863 P.2d 585 (1993).

In the "Adjusted Order of Child Support On Revision," Judge O'Donnell set forth the reasons for granting Kaplan a downward deviation from the standard child support schedule.

> Per the Order of Child Support entered herein on December 17, 2010, the father was required to pay 100% of both children's tuition at University Prep and accordingly was granted a 22.2% downward deviation from the standard transfer payment. (The standard calculation of $1,928 for two children was reduced to $1,500, a

difference of $428 or 22%). As the law of the case, this 22.2% downward deviation is required to be applied to the present standard calculation of $1,738.05 for one child. The present child support transfer payment should therefore be $1,352. ($1,738.05 X 22.2% = $386; $1,738 minus $386 = $1,352).

A transfer payment of $1,352 per month, along with a payment of 100% of the child's private school tuition, provides for the child's needs.

The father is ordered to pay the full school tuition for the child. This provision may be reviewed if tuition increases by $1,250 or more over the 2010 tuition of $26,000 per child.

Here, Judge O'Donnell granted an adjustment. The *propriety* of a deviation was a legal issue previously decided. Thus, it was so that a deviation in some amount might be considered to be required by the law of the case doctrine. However, because an adjustment took place, the judge retained the authority to adjust the amount of the deviation. Thus, Judge O'Donnell misspoke by stating that the 22.2 percent downward deviation ordered in 2010 was the "law of the case." However, the 22.2 percent deviation is within the range of the evidence presented. The court was free to adjust it or not, as it saw equitable. No prejudicial error is established. No appellate relief is warranted.

VII

Kohls next contends that the superior court erred by not ordering Kaplan to reimburse Kohls for paying more than her share of the cost of health insurance premiums for I.K. and Z.K. Kohls cites no authority to support her position that

- 21 -

Judge O'Donnell was required to address this issue in an adjustment proceeding. He declined to do so. We will not disturb this decision on appeal.[17]

VIII

Kohls next contends that the superior court erred by imposing CR 11 sanctions on both her and her counsel based on findings that Kohls acted improperly by presenting for entry an order that did not fully conform to the commissioner's oral ruling and by filing an unpermitted memorandum. We disagree.

"The purpose of [CR 11] is to deter baseless filings and curb abuses of the judicial system." Skimming v. Boxer, 119 Wn. App. 748, 754, 82 P.3d 707 (2004) (citing Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994)). CR 11 provides that the trial court may impose sanctions against a party or his attorney if a pleading, motion, or legal memorandum is submitted that is (1) not well grounded in fact, (2) not well grounded in law, (3) filed for an improper purpose, and (4) when viewed objectively, the culpable party or attorney failed to make a reasonable inquiry into the factual or legal basis for the action. Madden v. Foley, 83 Wn. App. 385, 389, 922 P.2d 1364 (1996). We apply an objective standard to determine whether a reasonable person in like circumstances could believe his actions to be factually and legally justified. Bryant v. Joseph Tree, Inc., 119

---

[17] In her appellate brief, Kohls also contends that the superior court erred by refusing to order Kaplan to reimburse her for the cost of certain unpaid health care expenses for I.K. and Z.K. The parties agree that a settlement has been reached on this issue. Thus, the issue is moot.

Wn.2d 210, 220, 829 P.2d 1099 (1992). "The burden is on the movant to justify the request for sanctions." Biggs, 124 Wn.2d at 202.

## A

Kohls first asserts that the imposition of CR 11 sanctions on both her and her attorney for presenting the superior court with an order that did not fully conform with the commissioner's ruling was improper. Specifically, she avers that the only change on the proposed order which varied from the commissioner's ruling was the inclusion of Kohls' monthly pension plan payments (which she claims the commissioner was statutorily mandated to include when calculating her income) and voluntary retirement contributions. Her argument does not persuade us.

The proposed order contained two crucial modifications that did not conform to the commissioner's ruling. First, Kohls' attorney included an additional $900 in child support to be paid by Kaplan that the commissioner did not order. Second, Kohls' attorney drafted a provision to state that Kaplan would pay 100 percent of college preparatory fees for I.K. when the commissioner had, in fact, ordered that Kaplan and Kohls would each pay a pro rata share of these fees. Thus, Commissioner Jeske found that these revisions were improper insofar as they "exceeded the scope of presentation." Her ruling was correct. No abuse of discretion is established.

## B

Kohls next asserts that the imposition of CR 11 sanctions on both her and her attorney for filing an unpermitted memorandum was improper. Specifically,

she avers both that the trial judge applied the wrong subsection of a local civil rule when he ruled on the request and that he did not make the required finding that her memorandum was either not grounded in fact, not grounded in law, filed for an improper purpose, or that her attorney failed to make a reasonable inquiry into the factual or legal basis of the action. Each contention is unavailing.

The record indicates that Judge O'Donnell applied the appropriate subsection of the applicable local civil rule and that he made the required factual finding prior to imposing sanctions. In fact, an examination of his ruling indicates that he concluded that Kohls' memorandum was improper for two reasons. First, even had the pleading addressed permissible issues, Judge O'Donnell found that the memorandum was improper insofar as it was "late-filed and not permitted by any court rule or statutory authority." Second, the contents of the memorandum amounted to a reiteration by Kohls of the same arguments that she had asserted at the initial trial by affidavit and throughout the hearing on revision. Thus, Judge O'Donnell found that the memorandum was improper because "despite this court's admonishment to counsel to address only this motion for CR 11 sanctions, counsel decided to relitigate Commissioner Jeske's prior ruling on separate sanctions." In this regard, the memorandum did not appropriately respond to the court's request or provide the court with any new information. Judge O'Donnell's ruling was correct. No abuse of discretion is established.

IX

Kohls next contends that the superior court abused its discretion by ordering interest to run on Commissioner Jeske's award of sanctions, but not on

Kohls' award of attorney fees and costs, from the dates of those orders. We disagree.

> Washington law has historically treated prejudgment interest as a matter of right when a claim is liquidated. A liquidated claim is one "'where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion.'" If the fact finder must exercise discretion to determine the amount of damages, the claim is unliquidated. The fact that a dispute exists over all or part of a claim does not make the claim unliquidated.
>
> An award of prejudgment interest is based on the principle that when a defendant retains money that is owed to another, he should be charged interest upon it. Nevertheless, a defendant is not required to pay prejudgment interest in cases where it is not possible to ascertain the amount owed to the plaintiff until the court has exercised its discretion in determining that amount. The amount owed must be ascertainable without the aid of a discretionary court ruling concerning the amount due before the obligor can be liable for prejudgment interest.

Dautel v. Heritage Home Ctr., Inc., 89 Wn. App. 148, 153-54, 948 P.2d 397 (1997) (footnotes omitted).

By seeking revision of Commissioner Jeske's ruling, Kohls nullified the commissioner's award of attorney fees and costs. In this regard, the award was neither final nor liquidated. There was no amount upon which interest could accrue until an amount of fees and costs was awarded on revision.

The CR 11 sanctions, on the other hand, were awarded as a penalty. The at-fault party should not be rewarded for resisting the imposition of the penalty. Not granting an award of prejudgment interest on the CR 11 sanctions would wrongly reward the at-fault party for seeking revision. An at-fault party should not benefit by delaying the sanction. Consistent with the principles underlying CR

11, the superior court acted within its discretion by imposing prejudgment interest on the sanction amount, retroactive to the date of the commissioner's order.

There was no error.

X

Kohls next contends that the superior court erred by not awarding her the full amount of the attorney fees and costs that she requested pursuant to RCW 26.09.140.[18] In doing so, she challenges Judge O'Donnell's finding on reconsideration that "a 25 hour investment of attorney time is reasonable considering the fact that much of the research and briefing had previously been conducted," contending that this finding is not supported by substantial evidence. We disagree.

Here, Kohls' argument that the superior court's award of attorney fees and costs was improper is based on her assertion that "the factual and legal questions involved were difficult and complex," that "[t]he time necessary for preparation and presentation of the case was substantial," and that "[t]he amount and character of the property involved was substantial." Contrary to her present intimation, however, the issues in this case amounted to simple mathematical adjustments in the child support order. The issue on reconsideration was the same issue that was presented to the trial court during the initial trial by affidavit. Thus, both the superior court's finding and its award of attorney fees and costs is supported by substantial evidence. See Dilley v. Dilley, 4 Wn. App. 270, 272,

---

[18] In total, Kohls' award of attorney fees and costs was $43,610.31.

481 P.2d 584 (1971) (award of attorney fees affirmed when supported by substantial evidence). There was no error.

## XI

In a cross appeal, Kaplan contends that the superior court erred by not imposing CR 11 sanctions on both Kohls and her counsel for filing a partial satisfaction of judgment once Kaplan paid the amount of attorney fees and costs awarded. We disagree.

In support of his request for CR 11 sanctions, Kaplan argued that by filing a partial satisfaction of judgment on the award of attorney fees and costs, Kohls and her attorney "put [him] in the position of having to either pay interest that without question was not owed, or pay a far greater sum in attorney's fees and costs necessitated by having to file a motion to defeat their claims. Such conduct is pure blackmail and bad faith. It violates Civil Rule 11."

Both the commissioner and the superior court judge were well acquainted with the jurisprudence of CR 11 by the time that they finishing dealing with the parties herein. We are confident that the judge was informed on the law when he denied the request at issue. No abuse of discretion has been established.

## XII

Each party requests an award of attorney fees and costs (payable by the opposing party) on appeal.

"A party to a dissolution is not entitled to attorney fees as a matter of right." In re Marriage of Terry, 79 Wn. App. 866, 871, 905 P.2d 935 (1995). Our

decision can be guided by our view of "the merit of the issues raised on appeal."

In re Marriage of Davison, 112 Wn. App. 251, 260, 48 P.3d 358 (2002).

Kohls seeks fees based on the law of "need and ability to pay." Kaplan seeks fees based on the law of frivolous appeals.

We exercise our discretion and deny both requests. The parties shall bear their own fees and costs on appeal.

Affirmed.

We concur: