[No. 21857-3-I.  Division One.  August 7, 1989.]

*In the Matter of the Marriage of* PAMELA LARIMER
SHANNON, *Respondent, and* AUBREY JACK
SHANNON, *Appellant.*

*Malcolm L. Edwards* and *Stanley N. Kasperson,* for
appellant.

*James D. McBride,* for respondent.

PEKELIS, J.—Aubrey Jack Shannon (Jack) appeals and
Pamela Larimer Shannon (Pam) cross-appeals from a

decree dissolving their marriage. Jack claims that the trial court erred in classifying the family residence as community property and that this mischaracterization was prejudicial error requiring a remand to the superior court. Pam assigns error to the trial court's findings that (1) funds in a Shearson Lehman Brothers account were traceable as to the separate and community interest of each party and had not been commingled; (2) she had no community property interest in the accumulated but undistributed earnings of Malcus, Inc.; (3) she was not entitled to an award of maintenance; and (4) she was not entitled to an award of her full attorney's fees and costs.

## THE FAMILY RESIDENCE

Pamela Estey and Jack Shannon met in July of 1985. On January 1, 1986, they were engaged to be married and started looking for a family residence. In February of 1986 they located a home in Bellevue that they liked. An earnest money agreement was prepared to acquire the home for a purchase price of $500,000 with a down payment of $200,000. Jack was the sole signator on the earnest money agreement. He paid from his personal Shearson Lehman Brothers account the $212,800 required for the down payment and closing costs. The deed to the house was recorded in his name as a single man, on March 7, 1986. Jack was the only party obligated on the note and deed of trust to pay the balance due.

On March 15, 1986, the parties both moved into the home, and on June 7, 1986, they were married. On February 28, 1987, the parties separated. The trial court entered a decree of dissolution on March 21, 1988.

The evidence at trial showed that the monthly house payments of approximately $2,800 were paid from a Rainier Bank account upon which both of the parties had signature authority. Pam testified that it was their mutual intention that her name should be put on the deed and that the house would be their community property. Jack denied having such intentions or making any such representations

to Pam. Pam testified that she and Jack reviewed his will together and that he agreed her name should be added to the deed. A 1984 will of Jack's admitted into evidence contained interlineations by Jack including the following: "I give interest in the house and its contents to wife". A letter from Jack's attorney that had been sent with a draft of the revised will was also admitted in evidence. The letter stated that "[y]ou [Jack] have indicated that you would like the new house to be in Pam's name also. If you would send me a copy of your deed on the house, I can prepare the requisite documents." Jack denied ever showing Pam a will, but did admit to having discussions with her regarding her having a life estate in the home.

The trial court found that:

> At all times the parties intended and treated the house as the family residence, and agreed that following marriage, title to the residence would be deeded by the respondent to the petitioner and himself as community property.

The trial court then concluded that the $200,000 equity in the residence was a community asset, and allocated $150,000 of it to Jack and a $50,000 lien to Pam, to be paid no later than February 11, 1993.

We first consider the issue of the proper characterization of the family residence. Jack contends that since his separate funds were used for the substantial down payment on the residence and his name only appears on all of the purchase and security agreements, the residence is his separate property. Thus, he contends, the trial court erred in characterizing it as a community asset and in awarding Pam a $50,000 lien. Pam responds that the trial court's characterization was not error. She points to the fact that the residence was purchased in contemplation of marriage and during an intended long-term, stable relationship. She also contends there was evidence that both parties intended the residence to become a community asset. Finally, Pam argues that even if it were error to characterize the residence as a community asset, the property division was

nonetheless fair, just and equitable and did not amount to a manifest abuse of discretion requiring remand.

■■ The character of property as community or separate is to be determined as of the date of its acquisition. *Baker v. Baker,* 80 Wn.2d 736, 745, 498 P.2d 315 (1972). In order to convert separate property into community property, the mutual intention of the parties must be evidenced by a writing. *See In re Estate of Verbeek,* 2 Wn. App. 144, 158, 467 P.2d 178 (1970). Here, the fact that the purchase occurred prior to the marriage with Jack's separate funds establishes that the property was Jack's separate property as of the date of acquisition. Neither Pam's testimony about the will nor her testimony concerning Jack's stated intentions regarding the property rise to the level necessary to evidence an intention by Jack to convert this asset into community property.

This situation is distinguishable from that which existed in the case cited by Pam, *In re Marriage of Hilt,* 41 Wn. App. 434, 704 P.2d 672 (1985). There the parties purchased property 5 months after cohabiting and 4 years before their eventual marriage, separate moneys of each were used for payments on the property, and the property was subsequently listed for sale with both parties signing the listing agreement. The court therefore held that the property was community.

It is doubtful that a meretricious relationship analysis has any applicability here, but even if it did, the facts of this case do not reveal any intent to deal with the property in a manner other than how the parties in fact did, that is, as Jack's separate property. Here, there was no continuous cohabitation prior to the acquisition of the residence, the relationship was of short duration, and there was little or no pooling of resources. *Cf. In re Marriage of Lindsey,* 101 Wn.2d 299, 304, 678 P.2d 328 (1984) (noting that such factors may be relevant to examination of a meretricious relationship for purposes of making a just and equitable disposition of property).

Thus, we conclude that the trial court herein erred in characterizing the residence as community property.

The more difficult issue is whether the trial court's mischaracterization requires remand. Basic principles in this area have evolved which are not altogether consistent. For example, our courts have frequently said that in a dissolution action, the court must have in mind the correct character of the property as community or separate prior to ordering any division. *Baker,* 80 Wn.2d at 745. It has also been said, however, that "'[c]haracterization of the property, however, is not necessarily controlling; the ultimate question being whether the final division of the property is fair, just and equitable under all the circumstances.'" *In re Marriage of Hadley,* 88 Wn.2d 649, 656, 565 P.2d 790 (1977) (quoting *Baker,* 80 Wn.2d at 745–46). Moreover, all of the property of the parties, whether it be community or separate, is before the trial court for disposition. *Holm v. Holm,* 27 Wn.2d 456, 464, 178 P.2d 725 (1947).

Thus, it is not surprising that two lines of authority have emerged on the question of the effect of mischaracterization. Some cases have reversed in view of a mischaracterization error. *See In re Marriage of Bepple,* 37 Wn. App. 881, 884, 683 P.2d 1131 (1984). Another line of cases upholds a decree in which the division is fair, just and equitable, regardless of a mischaracterization. *See, e.g., Worthington v. Worthington,* 73 Wn.2d 759, 768, 440 P.2d 478 (1968); *In re Marriage of Brady,* 50 Wn. App. 728, 732, 750 P.2d 654 (1988); *In re Marriage of Brossman,* 32 Wn. App. 851, 854, 650 P.2d 246 (1982), *review denied,* 98 Wn.2d 1017 (1983). We are able to reconcile these two lines of cases, however, and in so doing establish a general principle to be applied in future cases.

*Worthington* involved a marriage of long duration, in which the trial court made it clear that it was less concerned with characterization issues than with making an equitable division. *See Worthington,* 73 Wn.2d at 767. Similarly, in *Brossman,* the trial court explicitly stated that its property division was appropriate "regardless of the

characterization" of the property at issue. *Brossman,* 32 Wn. App. at 853.

In *Bepple,* on the other hand, this court remanded following a characterization error, stating that "[b]ecause the trial judge's distribution was so closely linked to his characterizing [the disputed asset] as a community purchase, we are unable to discern whether and to what extent he otherwise would have granted [the nontitle-holding spouse] a percentage of [the ownership]". *Bepple,* 37 Wn. App. at 885.

Thus, from these two lines of cases, we discern the following rule. Remand is required where (1) the trial court's reasoning indicates that its division was significantly influenced by its characterization of the property, and (2) it is not clear that had the court properly characterized the property, it would have divided it in the same way. In such a case, remand enables the trial court to exercise its discretion in making a fair, just and equitable division on tenable grounds, that is, with the correct character of the property in mind. *See Baker v. Baker,* 80 Wn.2d 736, 746–47, 498 P.2d 315 (1972).

Here, the trial court explicitly stated in its oral opinion that it believed its characterization of the parties' properties was critical to its decision.

> I think that oftentimes in these cases judges will say well, we got all the property both community and separate before us and so we don't really have to make a determination of what the property is, we just have to be fair, but I find it a little difficult to "be fair" unless I know what I'm dealing with in terms of property.

Furthermore, under the facts presented here we are unwilling to say that the court's division of this asset is so evidently fair that it obviates the need for remand. We have a marriage of short duration, in which Jack supplied all of the funds required for the down payment on the family home, although some payments on the home appear to have been made from community funds. We are cognizant of the fact that the court has authority to divide even the separate property of the parties. However, we cannot

say under these circumstances that the trial court's division would have been the same had it properly characterized the asset as Jack's separate property.

Thus, we reverse and remand for the trial court to determine whether a fair, just and equitable division warrants awarding Pam any lien against Jack's separately owned residence.[1]

WEBSTER, J., and REVELLE, J. Pro Tem., concur.

---

[1]We affirm the trial court's rulings on the other property and maintenance issues before it in the remainder of this opinion, which has no precedential value and thus is not published. *See* RCW 2.06.040.