[No. 26473-1-II.   Division Two.   March 29, 2002.]

*In the Matter of the Marriage of* GERALD STEVEN CHUMBLEY, *Appellant*, and MARY PATRICIA BECKMANN, *Respondent*.

---

872

*Catherine Wright Smith* (of *Edwards Sieh Smith & Good friend, P.S.*), for appellant.

*Charles K. Wiggins* and *Kenneth W. Masters* (of *Wiggins Law Offices, P.L.L.C.*), for respondent.

ARMSTRONG, C.J. — During her marriage to Gerald Chumbley, Patricia Beckmann exercised stock options that she acquired through her employment. She purchased some stock with separate funds. The trial court characterized this stock, worth nearly $550,000 at the time of trial, as Beckmann's separate property; the court characterized the value of the option when Beckmann exercised it, about $51,000, as community property. The principal issue on appeal is whether the court erred in ruling that the stock was Beckmann's separate property. We hold that the stock was community property and that Beckmann was entitled at most to a lien for her separate contribution. We reverse and remand for the trial court to reconsider its division of property.

## FACTS

Gerald Chumbley and Patricia Beckmann married in 1984. During most of the marriage, Chumbley worked in residential construction and Beckmann worked as a research scientist. Beckmann earned a Ph.D. in biochemistry and pharmacology in 1985 and obtained a job at Immunex Corporation in 1988.

The parties accumulated substantial assets during the marriage. Beckmann inherited a significant amount of money from her father, who died in 1991. She kept the money in a separate account, which contained $520,914 at the time of trial. Also, Immunex granted Beckmann stock options as part of her employment. Beckmann exercised

these options on three occasions during the marriage. In December 1992, she exercised options to purchase stock using a loan from Immunex. In May 1993, she exercised additional options using money from her separate account. In June 1993, she exercised options by selling some of the stock purchased to buy more shares. Beckmann would have lost the options if she had not exercised them.

Chumbley and Beckmann dissolved their marriage in 2000. At the trial, they disputed whether the stock options exercised in May 1993 were community or separate property. Beckmann contended, and the trial court concluded, that the stock purchased in May 1993 with money from her separate account was her separate property. Beckmann paid $38,391, including taxes, from her separate account for that stock. At the time of trial, the stock was worth about $549,780.

Although the trial court awarded Beckmann the stock as her separate property, it recognized that the option exercised to purchase the stock was community property. To compensate Chumbley for this, the court characterized the value of the option when it was exercised, $50,816, as community property and awarded that amount to Chumbley.[1] This was the difference between the market value of the stock and the cost to Beckmann, less taxes, when she exercised the options.

## ANALYSIS

### I. Characterization of Stock

Chumbley argues that the trial court erred by awarding Beckmann, as her separate property, the stock that she purchased in May 1993 with funds from her separate account. He argues that the stock should be community

---

[1] Chumbley assigns error to this award, arguing that he did not receive the value of the stock option because it was included in the value of the house he was given. Because we hold that the stock was community property, we need not decide this issue.

property because Beckmann obtained it by exercising an option that was community property.

An appellate court reviews a trial court's characterization of property as community or separate de novo. *In re Marriage of Skarbek*, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). Assets acquired during marriage are presumed to be community property. RCW 26.16.030; *Dean v. Lehman*, 143 Wn.2d 12, 19-20, 18 P.3d 523 (2001). To rebut the presumption, a party must present clear and convincing evidence that the transaction falls within an exception. *Dean*, 143 Wn.2d at 20. An asset assumes its character as community or separate when it is acquired. *In re Marriage of Zahm*, 138 Wn.2d 213, 223, 978 P.2d 498 (1999). A vested employee stock option is acquired when granted. *In re Marriage of Short*, 125 Wn.2d 865, 871, 890 P.2d 12 (1995).

The parties agree that all of the Immunex stock options were community property. They disagree as to the character of the stock Beckmann acquired with separate funds by exercising the options. Chumbley relies on *In re Marriage of Sedlock*, 69 Wn. App. 484, 849 P.2d 1243 (1993), and *In re Marriage of Harrington*, 85 Wn. App. 613, 935 P.2d 1357 (1997). In both cases, the parties acquired stock options or rights during the marriage that would not be exercised until after the marriage dissolved.

In *Sedlock*, the parties invested in two companies and acquired from each company a warrant to buy stock at a fixed price. After the marriage, Mr. Sedlock used his separate earnings to pay off the remaining debt from purchasing the investments. *Sedlock*, 69 Wn. App. at 505. Thus, he was entitled to an equitable lien on the community asset for his separate contribution. He wanted to measure his lien "by a percentage of the increase in value in proportion to his contribution . . . because the bulk of the increase due to market conditions occurred after he made his separate contribution." *Sedlock*, 69 Wn. App. at 508. Division One rejected his argument, holding that while Mr. Sedlock was entitled to reimbursement of his separate contribution to the purchase price, the value of each investment belonged

to the community because his contribution "had nothing to do with the increases in value of the stocks at issue." *Sedlock*, 69 Wn. App. at 508.

In *Harrington*, the parties disputed the character of their right to acquire stock in their car dealership at a discount. *Harrington*, 85 Wn. App. at 622. Division One characterized this right as a vested employee stock option. *Harrington*, 85 Wn. App. at 624-25. While preferred stock could be purchased with funds from any source, common stock had to be purchased with corporate profits or bonuses. *Harrington*, 85 Wn. App. at 628. Mr. Harrington managed the dealership; Mrs. Harrington was not involved. Thus, because any future common stock purchases would be made with Mr. Harrington's separate earnings, the trial court awarded the stock option as his separate property. Division One reversed and concluded that the right remained community property because the Harringtons acquired it during the marriage. *Harrington*, 85 Wn. App. at 629. The court held that, as in *Sedlock*, Mr. Harrington would be entitled to reimbursement for his separate contributions toward future stock purchases. *Harrington*, 85 Wn. App. at 630.

█ █ In both *Sedlock* and *Harrington*, the parties acquired stock by exercising a community option with separate funds. And in both cases, the court held that stock options exercised with separate funds resulted in community stock. In both *Sedlock* and *Harrington*, the stock options existed at the time of the parties' separation or at the time of trial. Here, the option was exercised well before the parties separated. Thus, the options were not assets before the court at the time of dissolution. But this distinction is not critical.

The trial court determined that, because the options were community property, the value of the option when Beckmann exercised it was a community asset. But the court ruled that the resulting stock was Beckmann's separate property, reasoning that "a community property asset can become a separate property asset if separate funds are used to acquire that community property asset." Clerk's Papers

at 61. This was error. Generally, separate property can become community property through commingling with community assets, by agreement, or by other means, but community property can become separate property only by agreement. *See In re Marriage of Hurd*, 69 Wn. App. 38, 50-51, 848 P.2d 185 (1993). Thus, the community had an interest not only in the value of the stock options, but in the resulting stock. Exercising the options did not extinguish the community interest.

We next consider the proper distribution of the increase in value of the stock. In *Sedlock*, the husband argued that the stock's increased value should be apportioned according to the ratio between community and separate contributions. He relied on *In re Marriage of Elam*, 97 Wn.2d 811, 650 P.2d 213 (1982). There, the court held such an apportioning was proper as to the increased value of a home owned by one spouse before the marriage but improved with community effort. *Elam*, 97 Wn.2d at 816-17. The *Sedlock* court rejected the argument because the husband's use of separate funds "had nothing to do with the increases in value of the stocks at issue." *Sedlock*, 69 Wn. App. at 508. And so it is here. The increase in stock value had nothing to do with Beckmann's separate contribution; rather, market forces increased the value of both the stock options and the stock. Here, the community owned the right to purchase stock at a fixed price and it was this right that led to the substantial benefit realized when the stock price went up. We hold that the stock purchased in May 1993 was community property and that Beckmann has a lien claim for the amount of her separate contribution.[2]

■ Beckmann argues that even if the trial court mischaracterized the stock, this court need not reverse the trial court's division of property. We do not remand for redistribution unless "(1) the trial court's reasoning indi-

---

[2] The parties disagree as to the amount of Beckmann's contribution. The dispute centers around payment of taxes on the purchase and whether Beckmann repaid her separate estate for some of the purchase price with community earnings. The trial court must determine the actual net cost to Beckmann's separate estate of the stock purchase to determine the value of her lien.

cates that its division was significantly influenced by its characterization of the property, and (2) it is not clear that had the court properly characterized the property, it would have divided it in the same way." *In re Marriage of Shannon*, 55 Wn. App. 137, 142, 777 P.2d 8 (1989).

The trial court awarded approximately $727,000 of community assets to Chumbley and approximately $662,000 of community assets to Beckmann. But the court also awarded Beckmann approximately $1,260,000 in separate assets, including all of the stock purchased in May 1993, worth approximately $550,000 at the time of trial. Although Beckmann was seriously injured in a 1995 auto accident, she returned to work after the accident. And she has demonstrated a greater earning capacity than Chumbley. Finally, the court divided evenly all of the other Immunex stock after characterizing it as community property. Thus, we conclude that the court's decision as to the nature of the stock was the basis of its distribution. We remand for the trial court to redistribute the property with the May 1993 stock considered community property.

Reversed and remanded.

SEINFELD and BRIDGEWATER, JJ., concur.

Review granted at 147 Wn.2d 1019 (2002).