# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 56769-5-II |
| ANN WEAVER, | |
| Appellant, | |
| and | |
| GEOFFREY WEAVER, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, C.J.—Ann Weaver appeals the superior court's amended findings of fact and conclusions of law dissolving her marriage to Geoffrey Weaver, the final dissolution order, and the child support order. Ann[1] argues that the trial court erred by considering Geoffrey's late filed asset and debt spreadsheet. She also argues that the court erred by awarding the family home to Geoffrey, by adopting Geoffrey's characterization and valuation of his Colorado property, by mischaracterizing the funds in their retirement accounts, and by deviating from the standard child support calculation. Ann further asks for an award of attorney fees incurred during trial and both parties ask for an award of attorney fees on appeal.

We affirm and we decline to award attorney fees to either party.

---

[1] Because the parties share a last name, we use their first names to avoid confusion.

## FACTS

Geoffrey and Ann Weaver were married in September 2005. They had twin girls during their marriage, who were 13 at the time of the dissolution. After mediation and arbitration, both parties agreed to a schedule providing for equal residential time with the girls. However, the parties had an extensive six-day trial to resolve issues related to the division of property, spousal support, child support, and attorney fees.

### I. PROPERTY DIVISION

A.    Geoffrey's Asset/Debt Spreadsheet

Ann produced an illustrative asset and debt spreadsheet on the second day of trial, which was admitted into evidence. At the opening of trial, the trial court noted that Geoffrey had not yet provided proposed orders and requested that they be provided by the time Geoffrey started his presentation of evidence.

On the fourth day of the six-day trial, the trial court asked Geoffrey if he was similarly going to prepare a spreadsheet showing his requests for property distribution and division. Geoffrey responded that he did not believe he would. The court replied that it would be helpful if he provided one prior to closing but that it was not required, and Ann did not object.

At the conclusion of day five, the trial court requested final versions of the parties' proposed orders to be submitted before closing arguments. Geoffrey asked if the court would like an illustrative asset and debt sheet. The trial court judge stated a spreadsheet would make it easier, but one was not required, and Ann did not object.

Geoffrey provided an illustrative, proposed asset and debt division spreadsheet with his proposed orders after the close of evidence. Ann did not object to consideration of the proposed asset and debt sheet at that time.

After closing arguments and taking the matter under consideration, the trial court entered an oral ruling generally adopting Geoffrey's proposal for asset and debt distribution, awarding Ann 52 percent of the net assets and Geoffrey 48 percent. The trial court reasoned that Geoffrey's asset and debt spreadsheet was not arbitrary, it was "based on the best information available," and it was the most fair and equitable way to divide the parties' assets and liabilities. Clerk's Papers (CP) at 133. But in its oral ruling, the trial court mistakenly stated that Geoffrey's spreadsheet of proposed asset and debt distribution had been admitted as an exhibit during trial. In fact, only Ann's spreadsheet reflecting her proposed distribution had been admitted as an exhibit.

Ann did not object to the trial court's consideration of Geoffrey's spreadsheet until presentation of the written orders. Ann asserted that Geoffrey's spreadsheet was not entered into evidence as an exhibit, and she was not provided with an opportunity to cross-examine Geoffrey about it or present rebuttal evidence. The trial judge responded that he believed the asset and debt spreadsheet was provided with the intent of essentially summarizing what the testimony and evidence had been from Geoffrey's perspective. The trial court again took the issues raised under advisement, but it ultimately declined to significantly change its decision with regard to the division of property based on Ann's objection.

It is unclear whether Geoffrey's proposed orders or his asset and debt spreadsheet are in the trial court record. Neither party designated them in our record.

B.     Real Property Distribution

The parties owned three homes: one on Zachariasen Court, the marital home in Washington; one on Kukas Loop, a rental home in Washington; and one on Barberry Place, a rental home in Colorado. The trial court awarded Geoffrey the marital home and the Burberry Place home, and it awarded Ann the Kukas Loop home.

1.     Trial testimony and findings regarding Zachariasen Court property

In 2014, the parties purchased the Zachariasen Court home, and at trial, Ann testified that the value of the Zachariasen house was between $740,000 and $819,000. Geoffrey testified that he believed the value was about $850,000. The parties' mortgage on the property at the time of separation was around $340,000 with a monthly mortgage payment of $2,321.

At trial, Ann testified that she preferred to be awarded the Zachariasen Court home. She further testified that based on a conversation with a mortgage broker, she qualified for a $340,000 mortgage in her own name, and she could refinance the home. She testified that she was qualified based on her income, but this included the temporary spousal and child support she was receiving at the time. However, Ann was unsure if she would qualify without the spousal support and she said she would not qualify without the child support. She had been paying the mortgage payment on the property since July 2020.

The trial court found that there was insufficient evidence that Ann would be able to reasonably, and in a timely manner, refinance the home. The court concluded that it was fair and equitable to award the Zachariasen Court property to Geoffrey and he would be responsible for refinancing and paying the mortgage. Ann would be awarded the Kukas Loop property, which was free of encumbrances.

4

2.      Valuation of the Kukas Loop and Barberry Place properties

The trial court found that Geoffrey's valuations on his proposed asset and debt spreadsheet were based on the best information available.

In 2016, the parties refinanced the Zachariasen Court property and purchased the Kukas Loop property. The Kukas Loop property is fully paid for. At trial, Ann testified she believed the value was between $400,000 and $420,000. At trial, Geoffrey testified that he believed the value was around $400,000 to $405,000. Geoffrey has resided in Kukas Loop since he moved out of Zachariasen Court in July 2020.

It was undisputed that Geoffrey owned the Barberry Place property in Parker Colorado prior to the marriage. At trial, Ann testified that the market value in fall 2020, was somewhere between $389,352 and $433,800. Geoffrey testified that the low $300,000's was a reasonable sale price. The Barberry Place property had an outstanding mortgage of approximately $150,000. At trial, Ann claimed that the marital community was owed reimbursement of $30,000 allegedly invested in the Barberry Place home over the years on work such as repair and maintenance projects paid for by the community. However, the trial court awarded the Barberry Place home to Geoffrey in its entirety as his separate, premarital property.

3.      Retirement accounts

The parties also had various retirement accounts, including Geoffrey's Geneos account, his Voya/DeWafflebakker account, and Ann's Millennium Trust account. The two contested retirement accounts are the Geneos account, which Geoffrey alleged held $72,000 in funds contributed prior to the marriage and Ann's Millennium Trust account, which she alleged held

about $40,000 in funds contributed prior to the marriage. They both also owned other retirement accounts before their marriage, none of which are in dispute.

The trial court awarded Ann:

- all of her separate property retirement accounts, totaling roughly $38,000;

- $97,473.64.00 from Geoffrey's Voya/DeWafflebakker 401(k) Plan;

- the full amount in her Millennium Trust account, which held $75,227.85; and

- nothing from Geoffrey's Geneos account, which held an approximate value of $100,000.

Ann's award included a 52 percent share of the market increase in both parties' accounts between the time of separation and the time of trial.

Geoffrey was awarded:

- approximately $100,000, the total amount in the Geneos account; and

- all remaining funds in the Voya/DeWafflebakkers 401(k) Plan, which had a total balance of about $139,000 as of June 30, 2021.

### a. Geneos account

Geoffrey testified that he had accumulated roughly $72,000 in his Geneos retirement account prior to the marriage. He did not make any contributions during the marriage. At trial, Geoffrey asked the court to find that $72,000 of the Geneos account was separate property and that any gains during the marriage could be treated as community property. Geoffrey testified that the money was deposited with American Skandia by January 2006, which was a new retirement account that was a consolidation of the various retirement accounts he had prior to marriage, which was all later moved to the Geneos account. To establish the separate property character of the funds in the account, he offered a vested distribution form from Advance Food Company, dated

November 9, 2006 (approximately one year after the marriage), which showed a balance of $72,154.87. Geoffrey presented the Geneos account statements to show the current balance of approximately $100,000, thus reflecting a gain of roughly $28,000 during the marriage. The trial court awarded Geoffrey any and all funds held in the Geneos retirement account that was acquired prior to and during the marriage, with an approximate value of $100,000 at the time of separation.

   b.    Millennium Trust account

In 2000, Ann worked for a computer company in Colorado and acquired a 401(k) benefit while employed at that company. She testified that the 401(k) evolved into an account at Virtual Enterprises d/b/a Advanced Systems Group with a value of $40,201.21 as of September 30, 2006, about one year after the marriage. Ann testified that she contributed to the 401(k) plan while employed at Advanced Systems Group from January 2000 to January 2008. She stopped making contributions when she quit working in 2008 when the twins were born, which left a balance of $40,756.55 as of July 2008.

The Virtual Enterprises 401(k) was eventually rolled into the Millennium Trust account. Ann testified that as of December 31, 2020, the balance of the account was $83,268.80. This reflected a gain of about $43,000 during the marriage.

At trial, Ann initially characterized the account as community property since she did not have proof of the amount in the account at the date of marriage. Then she claimed that about 50 percent was separate property because roughly half the contributions were made prior to the marriage. However, the trial court found that there was insufficient tracing to find any portion of the Millennium Trust account to be separate property. Nevertheless, the trial court awarded the entire Millennium Trust account to Ann.

c.        Voya/DeWafflebakker account

Geoffrey explained that this retirement account consisted entirely of community property acquired during the marriage. The parties did not designate the exhibits so they are not included in our record. However, as of June 30, 2021, Geoffrey testified that the total account balance was around $139,000. The court's orders reflect that the trial court awarded Ann $97,473.64 from this account as part of the overall 52/48 percent division of the parties' net assets in Ann's favor.

## II. CHILD SUPPORT AND SPOUSAL MAINTENANCE

At trial, Geoffrey asked the trial court to make a deviation from the standard child support calculation because of the parties' parenting plan, which evenly split time with the children between Ann and Geoffrey. Under the standard calculation, Geoffrey's support would amount to $1,496.88 while Ann's would amount to $883.12; however, he asked the trial court to make a deviation from the standard calculation because the children spend significant time with him. Additionally, the nonstandard amount still gave Ann enough money for the children's basic needs. The trial court agreed and ordered Geoffrey to pay Ann a total monthly child support amount of $306.88.

The trial court also awarded Ann spousal maintenance of $1,500 per month for the first three years starting in 2022, followed by $1,000 per month for the following two years. Spousal maintenance would therefore continue until after the children, who were 13 years old in early 2022, turned 18 years old. The monthly net incomes for the parties after accounting for child support and spousal payments are roughly $6,200 for Geoffrey and $6,080 for Ann.

III. ATTORNEY FEES

Ann requested attorney fees based on her need and Geoffrey's ability to pay. In addition, both parties requested an award of attorney fees based on a finding of intransigence.

The trial court denied both parties' claims of intransigence and ordered each party to pay their own attorney fees. The court found that both sides engaged in behavior that enhanced conflict and enhanced the prospects of litigation; however, the court refused to make a finding of intransigence against either party.

Ann appeals the final order containing the property division and the child support order. Neither party designated the exhibits, so they are not contained in our record, nor is Geoffrey's asset and debt spreadsheet.

ANALYSIS

I. PROPERTY DIVISION

A.      Consideration of Geoffrey's Asset and Debt Spreadsheet

As an initial matter, Ann argues that the trial court erred when it indicated that it was adopting Geoffrey's asset and debt spreadsheet that she says was provided just 10 minutes prior to closing arguments along with his proposed orders. She claims that she was provided no opportunity to respond to the spreadsheet. Ann claims that the court's reliance on Geoffrey's spreadsheet effectively reopened the case. She contends she was prejudiced and the court abused its discretion. *See Estes v. Hopp*, 73 Wn.2d 263, 270, 438 P.2d 205 (1968).

Geoffrey responds the trial court was well within its discretion to request and consider his asset and debt spreadsheet as part of his proposed orders. He states that there were multiple times prior to the last day of trial where the idea of Geoffrey presenting an asset and debt sheet was

discussed, and Ann did not object. He argues that under RAP 2.5(a), we need not review a claim of error that is raised for the first time on appeal. He further claims that there was no prejudice to Ann, as she was present at trial when all of the evidence and testimony summarized in the spreadsheet was presented, and counsel had every opportunity to ask questions and cross-examine Geoffrey about that evidence. Thus, he argues that we should decline to review Ann's untimely claim of error.

Ann sufficiently objected to warrant review of her claim of error that the trial court improperly considered Geoffrey's asset and debt spreadsheet. Before the trial court entered final written orders, Ann explicitly objected to consideration of Geoffrey's proposed asset and debt spreadsheet since it was not entered into evidence and, she asserted, she did not have an opportunity to cross-examine Geoffrey about it or present rebuttal evidence.

Ann contends that consideration of the spreadsheet after evidence had closed amounted to reopening the case. But here, the trial court did not admit Geoffrey's asset and debt spreadsheet into evidence as an exhibit, rather it was the trial judge's understanding that Geoffrey provided the spreadsheet for the purpose of summarizing Geoffrey's proposed division and distribution of property based on the testimony and evidence presented during trial. Consideration of a summary of the evidence already presented at trial does not amount to reopening the case to consider new evidence. Further, Ann has the burden to show that the trial court erred and she has failed to designate the spreadsheet as part of our record or establish that any valuations in the spreadsheet were not already presented at trial. Thus, we decline to conclude that the trial court abused its discretion when it considered Geoffrey's asset and debt spreadsheet as an illustrative summary of relevant evidence presented at trial.

B.  Background on Property Division and the Characterization of Community Property and Separate Property

RCW 26.09.080(4) provides:

> In a proceeding for dissolution of the marriage . . . the court shall, . . . make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
> . . . .
> (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective . . . .

In fact, we will only substitute our judgment for the trial court's in the division of property if there has been a manifest abuse of discretion. *Worthington v. Worthington,* 73 Wn.2d 759, 768, 440 P.2d 478 (1968); *In re Marriage of Groves*, 10 Wn. App. 2d 249, 254, 447 P.3d 643 (2019).

We look to whether the final division of the property was fair, just, and equitable. *Groves,* 10 Wn. App. 2d at 254. We do not disturb the trial court's credibility determinations. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011) (noting that credibility determinations are not reviewed on appeal). When trial court findings are challenged, we review those findings for substantial evidence, which exists "'if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *In re Marriage of Wilson* , 165 Wn. App. 333, 340, 267 P.3d 485 (2011) (quoting *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)).

In Washington, "all property acquired during marriage is presumptively community property, regardless of how title is held." *Dean v. Lehman*, 143 Wn.2d 12, 19, 18 P.3d 523 (2001). The burden of rebutting this presumption is on the party challenging the asset's community property status. *In re Estate of Smith*, 73 Wn.2d 629, 631, 440 P.2d 179 (1968). The presumption can only be overcome by clear and convincing proof that the transaction falls within the scope of

a separate property exception. *In re Marriage of Kile*, 186 Wn. App. 864, 876, 347 P.3d 894 (2015).

As long as separate property can be traced and identified, it will retain its characterization as separate property. *In re Marriage of Schwarz*, 192 Wn. App. 180, 190, 368 P.3d 173 (2016). Tracing does not require "an exhaustive accounting." *Id*. at 217. However, if community and separate funds are "so commingled that they may not be distinguished or apportioned," then the entire amount is rendered community property. *Id.* at 190.

We review the factual findings supporting the trial court's characterization for substantial evidence. *Id*. at 192. Based on those findings, we review de novo whether the property was correctly characterized as community or separate. *Id.* However, a trial court's mischaracterization of property is "rarely a proper basis to reverse the court's property distribution . . . because the dispositive inquiry of the court's property distribution is that the court's decision 'is just and equitable under all the circumstances.'" *In re Marriage of Zier*, 136 Wn. App. 40, 46, 147 P.3d 624 (2006) (quoting *In re Marriage of Kraft,* 119 Wn.2d 438, 450, 832 P.2d 871 (1992)). "[T]he court is required to make an equitable distribution, not an equal one." *In re Marriage of Davison*, 112 Wn. App. 251, 259, 48 P.3d 358 (2002). Remand is only required where "'(1) the trial court's reasoning indicates that its division was significantly influenced by its characterization of the property, and (2) it is not clear that had the court properly characterized the property, it would have divided it in the same way.'" *In re Marriage of Kraft*, 119 Wn.2d at 449 (quoting *In re Marriage of Shannon*, 55 Wn. App. 137, 142, 777 P.2d 8 (1989)).

Here, the trial court took care to write in the relevant appendices to the order whether certain pieces of property were community or separate in character. For example, the trial court

designated the Barberry property and the Geneos account as separate property that Geoffrey acquired and funded before the marriage. The court noted on the appendices to its order that Ann's Millennium account was acquired before the marriage but it was partially funded during the marriage.

C.      Real Property Distribution

1.      The Zachariasen Court home

Ann argues the trial court failed to consider RCW 26.09.080(4), which requires consideration of where the children will live most of the time, when it awarded the family home to Geoffrey. She argues the Zachariasen Court property is significantly closer to her place of work and that she and the kids have friends in the neighborhood. Ann argues that awarding her the Zachariasen Court property would leave the Kukas Loop property to Geoffrey, and this is what the trial court should have done.

Geoffrey responds the trial court did in fact expressly consider the desirability of the children being able to continue to live in the family home. Awarding the Zachariasen Court home to Geoffrey was more likely to ensure that it stayed in the family, enabling the children to continue to live there during their 50 percent residential time with Geoffrey. We agree with Geoffrey.

Under RCW 26.09.080(4), the court must consider "the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time." We will not substitute our judgment for the trial court's unless there was a manifest abuse of discretion. *Worthington*, 73 Wn.2d at 768.

Here, Ann fails to show that the trial court failed to consider RCW 26.09.080(4). The children's time is evenly split between Ann and Geoffrey, and the trial court found that Geoffrey

would be able to refinance the family home while Ann likely would be unable to. Substantial evidence supports the trial court's finding that Ann risks being unable to refinance, considering her one conversation with a mortgage broker was based on her income being supplemented by the temporary child support and spousal maintenance at that time, and she acknowledged she could not refinance without this added income. We decline to disturb the trial court's finding that Geoffrey is in the best position to keep the marital home, which will allow their two daughters to continue to live there half of the time. The benefit of giving Ann the Kukas Loop property is that it is completely free of encumbrances. Furthermore, there is roughly equal equity in both the Zachariasen Court and Kukas Loop properties.

We affirm the trial court's award of the marital home to Geoffrey.

2.      The Barberry Place Colorado property

The trial court's factual findings regarding valuation of property should be reviewed under the substantial evidence standard. *In re Marriage of Soriano*, 31 Wn. App. 432, 435, 643 P.2d 450 (1982). Valuation that is within the range of the evidence presented at trial is generally supported by substantial evidence. *See id.*

Ann argues that the trial court erred in adopting Geoffrey's valuations of the Barberry Place property. She claims she provided evidence that the net value of the property was $280,859 it had community property interest of $30,0000 and it had a separate property interest to Geoffrey of $250,859. Ann suggests Geoffrey did not consider the recapture of depreciation when providing his valuation. She also claims that the trial court failed to address her contribution of time and labor to the Barberry Place property. She asks that we remand to require that the trial court give

the marital community credit for the value of improvements the community made to the property during the marriage. We disagree.

A reviewing court will not substitute its judgment for that of the trial court on disputed fact issues, including the evaluation of property. *Worthington*, 73 Wn.2d at 762; *Meeks v. Meeks*, 61 Wn.2d 697, 698, 379 P.2d 982 (1963) (refusing to review a sharply disputed value placed on the defendant's community trucking business for the purpose of making an equitable division of the community property). Separate property will remain separate property if it can be traced and identified. *Baker v. Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972). "There is a presumption that any increase in the value of separate property is likewise separate in nature, . . . 'except to the extent to which the other spouse can show that the increase was attributable to community contributions.'" *In re Marriage of Lindemann*, 92 Wn. App. 64, 69, 960 P.2d 966 (1998) (quoting *In re Marriage of Elam*, 97 Wn.2d 811, 816, 650 P.2d 213 (1982)). For example, "If the court is persuaded by direct and positive evidence that the increase in value of separate property is attributable to community labor or funds, the community may be equitably entitled to reimbursement for the contributions that caused the increase in value." *Lindemann*, 92 Wn. App. at 70.

Here, the court should not substitute its judgment for that of the trial court in regard to the valuation of the Barberry Place property. Both sides presented their competing values, and the trial court, based on the evidence presented, found Geoffrey's valuations to be more credible. Substantial evidence in the record, including Geoffrey's testimony, supports this finding.

As for Ann's argument that the community invested resources in the Barberry Place property, she has not supported her claim by direct and positive evidence. She has failed to

specifically identify in the record evidence of the community funds used on the Barberry Place repair and maintenance projects, or the amounts of these expenses. Nor has she established that the trial court erred in declining to find the community should be credited for labor expended on the Barberry Place property.

We affirm the trial court's valuation and distribution of the Barberry Place property.

D.     Retirement Accounts

1.     Geoffrey's Geneos account

Ann argues that the trial court erred when it found Geoffrey's Geneos account, valued at $72,000, to be separate property acquired prior to the marriage. She claims that Geoffrey has the burden to establish the separate property character of the funds by clear and convincing evidence. She states that self-serving testimony and Geoffrey's vested distribution form from November 9, 2006, are not sufficient and that the separate funds must be traced with some degree of particularity. She argues that remand is required since it appears that the trial court's division of property was dictated by a mischaracterization of the nature of the property.

Geoffrey responds that the trial court's characterization of the Geneos account was supported by substantial evidence. He argues that even if the trial court made an error in the characterization of the funds, remand is not required because the trial court made a ruling based on what would be a fair and equitable distribution and not based on the accounts' separate or community character. We agree with Geoffrey.

In *Schwarz*, the wife presented sufficient evidence tracing her initially separate property by providing both testimony and "positive documentary evidence" showing that accounts she owned entirely before the marriage were still maintained in separate, albeit different, accounts.

192 Wn. App. at 205-06. The court found this was sufficient to support a characterization as separate property, an exhaustive accounting was not required. *Id*. at 216-17.

Like the proof in *Schwarz*, Geoffrey's testimony and documentary evidence of his retirement balance prior to marriage was sufficient to establish the initially separate character of the Geneos account. *See id.* at 194. Geoffrey presented a document that reflected a disbursement of $72,000 from Advance Food Company shortly after the marriage. He testified the money was deposited with American Skandia by January 2006. He also presented the Geneos account statements to show the current balance of roughly $100,000. Exhaustive tracing was not required—Geoffrey's documentation was sufficient to convince a reasonable fact finder that the $72,000 was acquired prior to marriage. Ann did not present evidence that any money earned during the marriage was deposited into the Geneos account. Thus, there was substantial evidence to support the trial court's characterization of the Geneos account as separate property.

Further, even if the trial court had mischaracterized the Geneos account, Ann has failed to show that the division of the accounts is not fair, just, and equitable or that the trial court would have divided the accounts differently. Ann was awarded all of her separate property retirement accounts, totaling roughly $38,000. She was also awarded $97,473.64 from Geoffrey's Voya/DeWafflebakker 401(k) Plan, as well as the full amount in her Millennium Trust account, which held $75,227.85. Ann's award included a 52 percent share of the market increase in both parties' accounts between the time of separation and the time of trial. Geoffrey was awarded all funds in the Geneos account, about $100,000 and all remaining funds in the Voya/DeWafflebakkers 401(k) Plan. The trial court divided the entirety of all retirement accounts

so that Ann would receive 52 percent, and Ann fails to show this overall division was not fair and equitable.

We affirm the trial court's award of the entire Geneos account to Geoffrey.

2.      Ann's Millennium Trust account

Ann argues that the trial court's finding that the Millennium Trust account was funded during marriage is contradicted by evidence produced at trial, such as the summary statement that included the rollover from Virtual Enterprises d/b/a Advanced System Group on November 27, 2020, with a balance of $83,244.53.

The Millennium Trust account balance as of September 30, 2006, one year after the marriage, was $40,201.21. Ann states that the basic presumption that an asset acquired during marriage is community, can be rebutted by showing through tracing that the asset used to acquire the one in question was separate property. Ann argues that she met her burden here to show that the Millennium Trust account was made-up of her separate retirement funds at least in part. Ann contends she stopped making contributions to this account in January 2008, about two years after the marriage, when she quit her job to take care of the twins.

Geoffrey responds that Ann failed to prove any traceable separate property amount and the trial court was justified in finding the account to have been commingled to the point it should be considered entirely community property. He further argues the overall division of the accounts was fair and equitable and a different characterization would not have changed the trial court's decision. Lastly, Geoffrey argues that Ann's own asset and debt spreadsheet characterized the Millennium Trust account as community property, and thus, any error was invited. *See Hymas v. UAP Distrib., Inc.*, 167 Wn. App. 136, 148, 272 P.3d 889 (2012). We agree with Geoffrey.

Ann provided a statement for her 401(k) retirement account with her employer at the time, Virtual Enterprises, from six months after the parties' marriage. Ann testified that the amount in her 401(k) account as of September 30, 2006, one year after the marriage, was $40,201.21. She continued to make minimal contributions to that account until 2008, when she quit working.

It does not appear that Ann provided any expert testimony about how to apportion the separate property contributed to this account prior to the marriage. *See Schwarz,* 192 Wn. App. at 219. Even if the trial court could have roughly apportioned part of the Millennium Trust account as Ann's separate property, *see id.*, she still fails to show that the distribution was not fair, just, or equitable or that the trial court would have divided the property differently had it apportioned the Millennium Trust account as partially separate property. Rather, the trial court awarded the entire Millennium Trust account to Ann, even though it found that it was entirely community property and the court required Geoffrey to pay Ann $97,473.64 from Geoffrey's Voya/DeWafflebakker 401(k) plan. Ann has not established that this division was inequitable.

We affirm the trial court's division of the retirement accounts.

## II. CHILD SUPPORT

We review child support decisions under the abuse of discretion standard. *In re Marriage of Fiorito*, 112 Wn. App. 657, 663-64, 50 P.3d 298 (2002). The trial court's findings will not be disturbed on appeal if they are supported by substantial evidence. *In re Marriage of Bundy*, 12 Wn. App. 2d 933, 937-38, 460 P.3d 1111 (2020). "It is within the trial court's discretion to grant or deny a deviation and, generally, trial courts are not reversed on such decisions." *In re Marriage of Goodell*, 130 Wn. App. 381, 391, 122 P.3d 929 (2005).

Ann argues that the trial court erred when it deviated from the standard calculation for child support and instead awarded her a monthly child support amount of $306.88. She argues that in granting a deviation, the court is required to consider evidence of the increased expenses for the person seeking the deviation. She argues that Geoffrey has provided no such evidence. Ann also argues that the court may not deviate on the basis of "increased expenses" if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child. Br. of Appellant at 14. She states that the trial court's finding that the transfer amount of $306.88 for two teenage children still leaves her with enough money for the children's basic needs, is unsupported by any evidence in the record. Geoffrey responds that Ann's child support and spousal maintenance awards in combination are consistent with her request to equalize the monthly net incomes of both parties. We decline to disturb the trial court's child support award.

"When reasons exist for deviation, the court shall exercise discretion in considering the extent to which the factors would affect the support obligation." RCW 26.19.075(4). The trial court has discretion to deviate from the standard calculation based on shared residential time if the deviation would not result in insufficient funds in the household receiving support. RCW 26.19.075(1)(d). The statute also provides:

> When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.

*Id.*

Here, the children will spend equal time with each parent. Ann has failed to provide any evidence to support a conclusion that she would have insufficient funds under the child support

order that the trial court adopted. Here, the trial court received extensive testimony and documentary evidence regarding the parties' respective financial positions over the course of the six-day trial. The trial court was deeply familiar with the incomes and expenses of the two households. The trial court knew the value of assets and debts awarded to each. Based on Ann's imputed income, the trial court's deviation, and its award of spousal maintenance, the resulting monthly net incomes of the parties would be about $6,200 for Geoffrey and $6,080 for Ann. Considering that the trial court roughly equalized both parties' monthly incomes, there is substantial evidence supporting the finding that the deviation would not leave Ann with insufficient funds to support the children when they are living with her one half of the time.

We conclude that the trial court did not abuse its discretion in deviating from the standard child support calculation when considering the entire context of the trial court's decisions.

### III. ATTORNEY FEES

In reviewing awards or denials of attorney fees, we apply a two-part review: "we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and . . . we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion." *Gander v. Yeager*, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

Ann asks us to reverse the trial court's decision denying her attorney fees below and she seeks attorney fees on appeal. However, Geoffrey notes that Ann has not assigned error to the trial court's denial of her request for attorney fees at trial nor does she present any argument that the trial court abused its discretion in denying her fees. Although Ann's argument for attorney fees is brief, it is sufficient for us to address it even though Ann did not technically assign error to the

trial court's denial of attorney fees below. *See State v. Olson*, 126 Wn.2d 315, 319-20, 893 P.2d 629 (1995) (considering whether argument and authority were presented rather than strictly requiring an assignment of error).

A.      Request for Attorney Fees Incurred at Trial

At trial, both parties requested an award of attorney fees based on intransigence. The trial court denied these requests. Neither party appears to assign error to the trial court's decision not to award fees based on intransigence or argue the trial court erred in this regard.

Ann also sought an award of attorney fees based on her need and Geoffrey's ability to pay. On appeal, she asks us to revisit that request. However, the trial court appropriately declined to make such an award based on Ann receiving 52 percent of the parties' net assets and considering that after child support and spousal maintenance, the parties' net monthly incomes are roughly equal. Under these facts, the trial court did not abuse its discretion when it declined to order Geoffrey to pay all or part of Ann's attorney fees.

B.      Request for Attorney Fees on Appeal

        1.      Ann's request for attorney fees is not warranted

Ann again requests an award of attorney fees on appeal under RCW 26.09.140. In exercising its discretion, the appellate court considers "the issues' arguable merit on appeal and the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay." *In re Marriage of Kim*, 179 Wn. App. 232, 256, 317 P.3d 555 (2014).

We have reviewed Ann's affidavit of financial need. We decline to award Ann attorney fees on appeal under RCW 26.09.140.

2.      Geoffrey's request for attorney fees is not warranted

Geoffrey asserts that because Ann's appeal is frivolous, the court should award Geoffrey all of his attorney fees incurred in responding under RAP 18.9. "The appellate court . . . may order a party or counsel, . . . who uses these rules for the purpose of delay [or] files a frivolous appeal, . . . to pay terms or compensatory damages to any other party who has been harmed." RAP 18.9(a). The primary inquiry under this rule is "whether, when considering the record as a whole, the appeal is frivolous, *i.e.*, whether it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." *Streater v. White*, 26 Wn. App. 430, 434, 613 P.2d 187 (1980).

In determining whether an appeal is frivolous, the court is guided by the following considerations:

> (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Id.* at 434-35. Applying *Streater* and considering all of these factors, Ann's claims are not so devoid of merit as to award Geoffrey attorney fees. This case involved debatable issues upon which reasonable minds may differ.

We decline to award attorney fees on appeal.

CONCLUSION

We affirm, and we decline to award attorney fees to either party on appeal.

23

No. 56769-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Glasgow, C.J._
Glasgow, C.J.

We concur:

_Maxa, J._
Maxa, J.

_Che, J._
Che, J.